216 N.J. Super. 189 (1987)
523 A.2d 262
TOM ALLEN, PLAINTIFF-APPELLANT,
v.
RUTGERS, THE STATE UNIVERSITY OF NEW JERSEY, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued December 1, 1986.
Decided March 25, 1987.
*190 Before Judges PETRELLA, GAYNOR and SCALERA.
*191 Douglas S. Brierley argued the cause for appellant (Schenck, Price, Smith & King, attorneys; David S. Cramp, of counsel; M. Sheilah O'Halloran and Douglas S. Brierley on the brief).
George J. Kenny argued the cause for respondent (Connell, Foley & Geiser, attorneys; George F. Kenny of counsel; Kathleen S. Murphy on the brief).
The opinion of the court was delivered by GAYNOR, J.A.D.
Plaintiff appeals from a jury determination that the negligence of Rutgers, The State University was not the proximate cause of personal injuries suffered by plaintiff when he vaulted over a four-foot wall and fell approximately 30 feet onto concrete steps while a student patron at a football game at the Rutgers' stadium. It is contended a new trial was mandated by the failure of the trial judge to remove from jury consideration any contributory negligence of plaintiff based on his voluntary intoxication. He further claims the jury's determination defies the facts, the law and common sense and accordingly the trial judge erred in failing to order a new trial. Jury misconduct is also asserted as compelling a reversal and a retrial. We disagree with these contentions and affirm.
On October 18, 1980, plaintiff and a group of his fraternity brothers entered Rutgers Stadium for the purpose of watching an intercollegiate football game and also participating in an annual fraternity frolic known as "Rude Gazer." As a part of that frolic, fraternity members, in costume, would attempt during half-time to enter the running track surrounding the football field and run a quarter-mile race. The members of the group, including plaintiff, were prevented by the security personnel on three occasions from gaining access to the field and the running track.
During the course of the game and prior thereto, plaintiff consumed a quantity of "grain punch," a mixture of fruit *192 punch/Kool Aid and 180 proof grain alcohol. This beverage was brought into the stadium by the group in a five or ten gallon container. Although the university policy prohibited the consumption of alcoholic beverages during football games, which directive was enforced by the checking of packages and containers as patrons entered the gates and the escorting of visibly intoxicated people out of the stadium, the security personnel made no effort to ascertain the nature of the beverage which plaintiff's group had brought with them. Plaintiff became progressively intoxicated as he continued to drink the punch, even to the extent of falling asleep in the stands. At one point during an encounter with the security officers, plaintiff stumbled into one of the officers which prompted a direction to other members of the group to "get him up in the stands" and back to his seat. One of the ushers observed that plaintiff was drunk and should be taken home.
Being repulsed in their efforts to get onto the running track, plaintiff and two or three of his friends climbed over a wall and continued into a grassy bluff area. There, plaintiff tumbled, rolled and even laid down to sleep. The group then proceeded to the opposite side of the stadium and made another unsuccessful attempt to gain entrance to the track. Plaintiff then rushed back to the walkway at the top of the stands and, with the others in pursuit, darted along the walkway and vaulted over the wall at the far end of the walkway apparently without realizing there was a 30-foot drop to the concrete steps below. Plaintiff sustained severe and permanent injuries as a result of his fall.
At the conclusion of the evidence plaintiff's counsel sought a ruling that plaintiff's own negligence, if any, in voluntarily becoming intoxicated should not be considered by the jury. It was argued that by the adoption of its policies pertaining to alcoholic beverages in the stadium, Rutgers assertedly assumed the duty of protecting a person in plaintiff's condition against subjecting himself to injury and that this self-imposed duty *193 could not be eradicated by the very conduct it was intended to prevent. The trial judge was unpersuaded and permitted the jury to consider the comparative negligence of plaintiff. The usual negligence interrogatories were propounded for the jury to answer. The first two pertained to defendant's negligence and its causal relationship to the incident, while the third and fourth interrogatories concerned plaintiff's negligence and whether it was a proximate cause of his injuries. The fifth question sought an allocation of the negligence as between defendant and plaintiff and the sixth required an assessment of damages. The jury was properly instructed that the need to answer certain interrogatories was dependent upon the answers to preceding questions.
After the jury had deliberated several hours, it submitted the following question:
If the jury agrees that Tom Allen is more negligent than Rutgers in question number 5, must we answer question number 6?
Over the objections of both counsel, the judge answered the inquiry in the affirmative. The jury continued its deliberations and a short while later returned its verdict with the forelady indicating that only the first two interrogatories had been answered. Having overheard several jurors whispering to the forelady to tell the judge that they had answered interrogatory number 6, plaintiff's counsel requested permission to examine the verdict sheet. The trial judge denied this request and sealed the document. This application was renewed as part of the motion for a new trial and was again denied. Upon a motion filed by plaintiff with his notice of appeal, this court ordered the unsealing of the verdict sheet at which time it was revealed that the jury had answered interrogatory number 6 by inserting a damage figure of $150,000.
Plaintiff argues, as he did before the trial judge, that the issue of his negligence should not have been submitted to the jury as he was a member of the class protected by the policies and practices of the university against the use of alcoholic beverages at the stadium. He analogizes the situation to the *194 dram shop cases that bar a tavern owner from claiming the protection of a plaintiff's voluntary act in becoming drunk. Although Rutgers neither sold nor provided liquor to the plaintiff, he claims the anti-alcohol policies of the university are similar in effect to a regulation governing a licensee or a pertinent common law standard of care and created a duty to protect persons at the football game, including the inebriates, from possible dangerous reactions to the consumption of alcoholic beverages in the stadium. Accordingly, the breach by the university of the standard of conduct which it set for itself eliminated comparative negligence as a defense in the same manner as actual service of liquor to a visibly intoxicated patron or guest would in other contexts.
Plaintiff further asserts that, although the jury did not have to answer the interrogatory pertaining to plaintiff's negligence in order to reach a verdict, its finding that the negligence of Rutgers was not a proximate cause of plaintiff's injuries was tantamount to a finding that plaintiff's drinking was the sole cause of the accident. As in the dram shop cases, he argues that the element of proximate cause may not extinguish the very duty undertaken by the university to protect plaintiff against his own folly. If the intervening act of plaintiff's intoxication was a reasonably foreseeable event, then assertedly the university may not escape liability for the probable consequences of its negligent conduct regardless of the label appended to its defense. Furthermore, as plaintiff's inebriated condition rendered him incapable of any self-protective measures, allegedly the issue of his negligence was not properly a matter for the jury's consideration.
Plaintiff also contends that the misconduct of the jury constitutes a further ground compelling reversal and a remand for a new trial. It is argued that the jurors' inquiry during deliberations as to the conditions necessitating an answer to the jury interrogatory number 6, as well as their answering of that interrogatory, signified that the jury had already answered the prior four interrogatories affirmatively. The final determination *195 that the negligence of Rutgers was not a proximate cause of the accident is thus seen by plaintiff as a machination of the jury to deny any recovery because of his voluntary intoxication.
Initially, we note the jury's finding that the negligence of Rutgers was not a proximate cause of plaintiff's injuries rendered harmless any error by the trial judge in refusing to preclude the jury from considering plaintiff's comparative negligence. It was not necessary for the jury to consider this issue in order to return its verdict. Nevertheless, in our view the circumstances of this case did not require a deviation from the general rule that voluntary drunkenness ordinarily constitutes contributory negligence. Anslinger v. Martinsville Inn Co., 121 N.J. Super. 525, 534 (App.Div. 1972), certif. den. 62 N.J. 334 (1973).
We are unpersuaded by plaintiff's analogizing of the dram shop rule pertaining to the defense of comparative negligence to the responsibility of Rutgers toward inebriated attendees at an intercollegiate football game being played at the Rutgers stadium. While this rule does not permit the negligence of the intoxicated patron to be asserted by a licensee as a defense to injuries causally related to the serving of alcoholic beverages to one who is visibly intoxicated, such position is grounded in the common law and statutory duty imposed upon a licensee not to serve liquor to an intoxicated person. Soronen v. Olde Milford Inn, 84 N.J. Super. 372, 377-378 (App.Div. 1964) rev'd on other grounds 46 N.J. 582 (1966). Cf. Aliulis v. Tunnel Hill Corp., 59 N.J. 508, 510 (1971); Buckley v. Pirolo Estate, 190 N.J. Super. 491, 496-498 (App.Div. 1983) rev'd on other grounds, 101 N.J. 68 (1985). As noted in Soronen, this duty "would be rendered meaningless to a large extent if a tavern keeper could avoid responsibility by claiming that it was the person's own fault if he drank too much," inasmuch as "the postulation of the tavern owner's duty in such a situation assumes implicitly that there has been such fault on the part of the drinker and nevertheless imposes the protective duty." Id. at 377.
*196 Neither logic nor common sense compels the application of this rationale to the prohibition imposed by Rutgers against the presence or use of alcoholic beverages in the stadium during intercollegiate sporting events. While the implementation of this rule may have the effect of protecting patrons against their own folly, such consequence does not require that the university be solely responsible for injuries resulting from violations of the regulation and the failure or inability of the university personnel to effectively enforce the prohibition. Rutgers neither sells nor serves any alcoholic beverages consumed by violators, nor is it under any common law or statutory duty to protect patrons against the results of their voluntary intoxication. Placing the university in the same category as a tavern owner or social host who sells or provides liquor to an intoxicated person is factually unwarranted and legally unjustified as a strained application of the rule precluding a negligent tavern keeper or social host from asserting a comparative negligence defense.
We discern no legitimate basis for plaintiff's further assertion that the jury's determination was tantamount to a finding that plaintiff's drunkenness was the sole cause of his accident. Whether or not the jury so concluded, the controlling question is whether the jury was properly instructed as to proximate cause. We perceive no error in this respect nor is there any validity to the implied suggestion that the jury did not comprehend or follow the court's instructions concerning the matter of proximate cause. Clearly, it was within the province of the jury to find that plaintiff had failed to establish that his injuries were proximately related to the negligence of Rutgers. See McCappin v. Park Capitol Corp., 42 N.J. Super. 169, 173 (App.Div. 1956). It is evident that this jury finding reflected the conclusion that the negligence attributable to Rutgers was not so closely and significantly connected with Allen's improvident leap over the wall as to render it the proximate cause of his consequent injuries. See Caputzal v. The Lindsay Co., 48 N.J. 69, 77-78 (1966). Moreover, the jury *197 properly could have concluded that plaintiff's behavior was such a highly extraordinary consequence of the security officers' failure to enforce the anti-liquor policy of the university that fairness and common sense precluded a causal relationship between such negligence and plaintiff's injuries. Ibid; see also Griesenbeck by Kuttner v. Walker, 199 N.J. Super. 132, 140 (App.Div. 1985) certif. den. 101 N.J. 264 (1985).
Plaintiff's additional contention that the irregularities and misconduct of the jury committed during its deliberations and in the return of its verdict mandate a reversal and remand for a new trial is clearly devoid of merit. R. 2:11-3(e)(1). No factual or legal support has been furnished for the assertions that the jury was so offended by plaintiff's intoxication that they adopted whatever means necessary to insure he would not recover, that it changed its verdict without regard to the evidence, or that it did not follow the court's instructions. Plaintiff's reliance on Brandimarte v. Green, 37 N.J. 557, 562-63 (1962) is misplaced in view of the evident factual dissimilarity of that case.
We therefore affirm the jury verdict and the denial of plaintiff's motion for a new trial.
Affirmed.