238 N.J. Super. 463 (1990)
570 A.2d 29
THEODORE J. GEHERTY, PLAINTIFF-APPELLANT, AND CROSS-RESPONDENT,
v.
RICHARD J. MOORE, DEFENDANT-RESPONDENT, AND JOHN DOE BEING A PERSON OR OTHER ENTITY TRADING AS MCGUINN'S PLACE, DEFENDANT-RESPONDENT, AND CROSS-APPELLANT, AND RICHARD ROE NUMBER 1 THROUGH RICHARD ROE NUMBER 10, BEING PERSONS OR ENTITIES CONSTITUTING THE EMPLOYER, MASTER, PARTNER, OR OTHER PRINCIPAL OR PRINCIPALS OF DEFENDANT, RICHARD J. MOORE, AND ALSO CONSTITUTING THE PERSONS OR ENTITIES PROVIDING RICHARD J. MOORE WITH ALCOHOLIC BEVERAGES OR OTHER INTOXICANTS ON OR ABOUT APRIL 22, 1983, AND NEW JERSEY MANUFACTURERS INSURANCE COMPANY,[1] DEFENDANTS.
Superior Court of New Jersey, Appellate Division.
Argued November 29, 1989.
Decided February 8, 1990.
*465 Before Judges DREIER, SCALERA and D'ANNUNZIO.
Lowell F. Curran, Jr., argued the cause for appellant.
Lois Ann Wood argued the cause for respondent Richard Moore (Lewis and Wood, attorneys, Lois Ann Wood, on the brief).
*466 C. Woodward Strong argued the cause for respondent, cross-appellant McGuinn's Place, Inc., (Smith, Stratton, Wise, Heher & Brennan, attorneys, Peter R. Freed, of counsel, C. Woodward Strong, on the brief).
The opinion of the court was delivered by SCALERA, J.A.D.
Theodore Geherty brought suit against Richard Moore and McGuinn's Place, Inc., for personal injuries sustained when his parked vehicle was negligently struck by Moore's vehicle. Geherty alleged that Moore was intoxicated at the time and that prior thereto, he negligently had been served alcoholic beverages by McGuinn's Place.
Summary judgment was entered against Moore on the issue of liability. Thereafter, a jury trial was held on the liability issue against McGuinn's Place and on the issue of damages against both defendants. Geherty's motion at the conclusion of the evidence, to eliminate the issue of proximate cause as to McGuinn's Place, was denied. The verdict returned was molded to indicate that McGuinn's Place was not liable to plaintiff and damages of $80,000.00 were entered against Moore alone.
Subsequently, plaintiff moved for a new trial on the issue of liability against McGuinn's Place. Moore moved for a new trial on the issue of damages. Both motions were denied. Plaintiff filed an appeal from the judgment in favor of McGuinn's Place and McGuinn's Place filed a cross-appeal alleging that the award of money damages was excessive. Moore's motion seeking leave to file a cross-appeal nunc pro tunc, was denied.
Most of the operative facts involving liability were not disputed at trial. On April 22, 1983, at approximately 10:30 in the morning, Moore drove his 1980 Toyota to Baltimore, Maryland in connection with his work in a research program. Sometime around 1:00 p.m. he had lunch, during which he had "several beers." At about 4:30 in the afternoon he drove back toward his home at 12 Stonicker Drive, in Lawrence Township, New *467 Jersey. Somewhere above Philadelphia, just before crossing over the bridge to New Jersey, at about 6:00 p.m., Moore stopped at a bar for an hour or so, during which he consumed a "couple of beers."
He then drove into New Jersey and, at approximately 8:00 p.m., stopped at McGuinn's Place in Lawrenceville. He had been there on several occasions before. He drank beer while he was there, but could not recall how much. However, it was his "habit and custom" to drink "two to three beers per hour." He did recall that the beer was served in sixteen ounce glasses. Moore did not eat while at McGuinn's Place, nor did he recall having any conversations with the bartender that evening. At approximately 11:00 p.m., Moore left McGuinn's Place for home.
Then 19 years old, Geherty and his girlfriend, Susan Berry, arrived at her home at 13 Stonicker Drive sometime around 11:00 p.m. in a 1979 Volkswagen. Geherty parked in front of Susan's home for two to three minutes without any lights on. As Geherty was about to exit, he noticed Moore's car coming "quite fast" from the opposite direction. It came over to Geherty's side of the road and struck his car on the front driver's side pushing it over the curb, across the sidewalk and onto the lawn of a neighbor's yard. When Geherty went over to Moore, who was sitting in the driver's seat, he saw that Moore was "sort of swaying around a little bit" and smelled of alcohol. Geherty called for help and then suddenly felt as though "someone hit [him] in the head with a baseball bat." He sat on the lawn and shortly thereafter the police arrived. At this point he began to "shiver uncontrollably" and was taken to Princeton hospital.
Moore's deposition was read into evidence and indicated that after turning down Stonicker Drive and traveling about two blocks, Moore was "wide-angling to the left" as he normally does, to pull into the driveway of his house. All of a sudden, he *468 struck a car parked in a spot where none had ever been parked during the four years that he had lived there.
Lieutenant James Kelley was dispatched to the accident and found Moore standing outside of his vehicle. He appeared to be swaying a bit and Kelley smelled the odor of alcohol on his breath. Kelley asked Moore to perform several sobriety tests. During the finger to the nose test with his right hand, Moore appeared "sure" but seemed "a little uncertain" when using his left hand. Although Moore's speech was slurred and Kelley felt that he was "under the influence of alcohol," Moore was not loud, boisterous or rambling. Rather, he was polite, cooperative and appeared calm. However, because Kelley believed that Moore was intoxicated he was taken to police headquarters for a breathalyzer test.
At headquarters, Moore was given a breathalyzer test by Sergeant Richard Stout who used the Stevenson, model 900, machine. The first breath test, performed at 12:24 a.m., revealed Moore's blood alcohol content to be .21 percent. Approximately ten minutes later a second test indicated a blood alcohol content of .20 percent.
Plaintiff produced Richard Zylman, who testified without objection as an expert regarding "alcohol in the human body and the breathalyzer." He opined that the beer which Moore had drunk during lunch would have dissipated long before the time of the accident. However, he reached various conclusions by extrapolating the results of the breathalyzer test, Moore's body weight, the amount of beer consumed and the time over which he had been drinking. He calculated that Moore had drunk approximately 167 ounces of beer, or about 10 sixteen ounce glasses, between 6:00 p.m. and 11:00 p.m. He indicated that while drinking at the first bar in Pennsylvania, Moore's blood alcohol rose from zero to between .02 and .03 percent. After entering McGuinn's Place his blood alcohol level rose to .10 percent by 9:20 p.m. and to .15 percent by 10:30 p.m. Finally, by the time he left McGuinn's at 11:00 p.m., Moore's *469 blood alcohol level was up to about .17 percent. Eventually, his blood alcohol level increased to the .21 percent registered by the breathalyzer.
Zylman opined that at that point, Moore was "highly intoxicated." He concluded with the opinion that when the blood alcohol range of .12 percent was reached, even an "experienced drinker" would have exhibited effects which would have been "observable by an ordinary person." As part of its case, McGuinn's Place read Moore's deposition into evidence wherein Moore denied that his ability to drive had been affected by his consumption of alcoholic beverages. Further, David Lester, the expert for McGuinn's Place, testified that the particular model of breathalyzer machine used by the police to test Moore was subject to operator error, making its readings unreliable. In sum, McGuinn's Place sought to establish that Moore was not intoxicated that night and that, in any event, he did not exhibit any signs of intoxication while at its establishment.
At the conclusion of the evidence, with respect to the liability of McGuinn's Place, the trial judge charged:
Now, in this case, the plaintiff, as I've said, seeks damages against the defendant, McGuinns Place, contending that McGuinns Place was negligent by serving alcoholic beverages to defendant Moore while defendant Moore was intoxicated, and that such negligence proximately caused an accident in which the plaintiff was injured. Plaintiff contends that at the time the alcoholic beverages were served, defendant McGuinns Place knew or in the circumstances, should have known that the patron, Mr. Moore, was intoxicated.
In this case, I will use the phrase visibly intoxicated to mean a patron who McGuinns Place knew or from the circumstances, should have known was intoxicated.
Now, I've used the term negligence. Negligence is generally defined as the failure to exercise that degree of care for the safety of others which a reasonably prudent person would exercise in the same or similar circumstances. In determining whether such care has been exercised, you should consider whether the defendant and again now, we're talking about McGuinns Place only, should have foreseen in the attending circumstances that the natural and proximate consequences of its conduct would have been some accident or injury. For a person to be negligent, it is not necessary that it foresees the particular accident that occurred or the specific injuries which result from the accident. A person or in this case, the tavern owner, is negligent, however, if it does those acts which a reasonably prudent person would not have done, thereby creating *470 or contributing to a risk of harm and circumstances where a reasonably prudent person would have foreseen that the probable consequence of its conduct would be some accident or injury.
Thus, negligence is the doing of an act which a reasonably prudent person would not have done in the same or similar circumstances because that act creates or contributes an unreasonable and foreseeable risk of harm to others. A person is also deemed negligent if it creates or contributes to an unreasonable risk of injury by its conduct when that conduct is combined with the conduct of others which a reasonably prudent person would foresee.
In other words, a tavern owner is deemed negligent if it serves alcoholic beverages to a visibly intoxicated person in circumstances where a reasonably prudent person would foresee that by serving alcoholic beverages to such a person, it is causing or contributing to an unreasonable risk of harm to others that may result thereafter by the conduct of the intoxicated person.
In this connection, you may consider that in current times, traveling by car to and from a tavern is commonplace, and you may consider that the effects of intoxication of a driver may reasonably be foreseen.
Now, the Division of Alcoholic Beverage Control which is a state agency, pursuant to authority granted by a statute, enacted by our legislature has adopted Regulation 20, Rule 1, which provides in pertinent part as follows:
No licensee shall sell, serve or deliver or allow or permit the sale, service or delivery of any alcoholic beverage directly or indirectly to any person actually intoxicated, or allow or permit the consumption of any alcoholic beverages by any such person in or upon the licensed premises.
Now, such a regulation establishes a standard of conduct for tavern owners. The law's designed to protect not only patrons who are visibly intoxicated, but also to protect members of the public from foreseeable risk of injury.
If you find that the defendant McGuinns Place has violated that standard of conduct, such violation is evidence to be considered by you in determining whether negligence, as I've defined that term for you, has been established.
Thus, you may find the tavern owner negligent if you find that the tavern owner served or permitted to be served alcoholic beverages to a person who was intoxicated and that the tavern owner knew or from the circumstances, should have known that the person was intoxicated at the time that he was served.
Now, a person who is negligent is liable for injuries which are proximately caused by his negligence. And by proximate cause, as I've previously defined that for you, we mean a cause which naturally and probably led to the accident and resulting injuries. Where there are two or more causes of an accident, a person whose negligence is a substantial factor in contributing to a cause of the accident, is held liable to a person injured in said accident. If a tavern owner negligently served alcoholic beverages to a patron who was visibly intoxicated, and if such service of alcoholic beverages was a substantial factor in bringing about an accident, it would make no difference that other causes intervened and contributed to the accident, so long as those other intervening causes were *471 foreseeable or were natural and probable consequences of the risk of harm created by the sale of liquor to the visibly intoxicated person.
Thus, plaintiff is entitled to recover from the defendant if plaintiff proves by the preponderance of the evidence, the following elements:
One, that defendant was negligent in serving alcoholic beverages to defendant Moore when defendant Moore was intoxicated.
Two, that at the time when the alcoholic beverages were served, defendant McGuinns Place knew or should have known from the circumstances that defendant Moore was intoxicated.
And three, that such service of alcoholic beverages was a proximate cause or a substantial factor in causing the accident and injury complained of.
This charge was taken virtually verbatim from the language of Model Jury Charge 5.31. Cf. State v. Concepcion, 111 N.J. 373, 379, 545 A.2d 119 (1988) (commenting on the use of such aids).
A verdict sheet was also submitted to the jury which contained five interrogatories, the first three of which also followed the language in that same Model Charge and read:
1. Was defendant McGuinn's Place negligent in serving alcoholic beverages to defendant Richard Moore, when defendant Moore was intoxicated?
2. At the time alcoholic beverages were served, did defendant McGuinn's Place know, or should defendant McGuinn's Place have known from the circumstances that defendant Richard J. Moore was intoxicated?
3. If you answered questions 1 and 2 "yes", was the conduct of defendant McGuinn's Place a proximate cause of plaintiff's injuries?
The fourth interrogatory inquired about the defendants' comparative negligence and the fifth instructed the jury to assess plaintiff's damages, which it did at $80,000. The jury, by vote of 5 to 1, answered the first question in the negative and, as instructed, did not answer the second or third interrogatory.
Geherty contends that this charge was erroneous, confusing and was compounded by the submission of the erroneously phrased interrogatories. He argues that in Thompson v. Victor's Liquor Store, Inc., 216 N.J. Super. 202, 523 A.2d 269 (App.Div. 1987), we held that the sale or service of alcoholic beverages to an intoxicated person constitutes negligence per se, and that the jury may not find otherwise where that is properly established by the proofs.

*472 As noted in Buckley v. Estate of Pirolo, supra. [101 N.J. 68, 500 A.2d 703 (1985)] our dram-shop rule is one of common law, emanating from Rappaport v. Nichols. [31 N.J. 188, 156 A.2d 1 (1959)] This rule parallels the dram-shop statutes in many other states. We know that a violation of most statutes and administrative regulations is merely evidence of negligence, thus we might consider that a violation of the Rappaport rule or of the administrative regulation be merely such evidence. But the violation of some statutes, when coinciding with established common-law principles of tort liability, has been considered `negligence' as opposed to just `evidence of negligence.' See Dolson v. Anastasia, 55 N.J. 2, 10-11 [258 A.2d 706] (1969). Considering the treatment by the Supreme Court of the ramifications of the sale or service of alcoholic beverages to an intoxicated person or a minor in Rappaport vs. Nichols and its progeny, it is fair to hold that such a sale, is negligence per se. ... [Id., Thompson, 216 N.J. Super. at 210, 523 A.2d 269.]
In other words, the jury must be clearly instructed, without qualification, that once a plaintiff proves the elements set forth in Rappaport, infra, and Anslinger v. Martinsville Inn, Inc., 121 N.J. Super. 525, 532, 298 A.2d 84 (App.Div. 1972), certif. den., 62 N.J. 334, 301 A.2d 449 (1973), it must find the tavern owner to have been negligent.
The prerequisites to establish a tavern owner's negligence are threefold:
(1) The patron must be intoxicated; (2) the tavern owner or its employee must know or should have known he was intoxicated and (3) the tavern owner must serve liquor to the intoxicated person. Anslinger, 121 N.J. Super. at 532, 298 A.2d 84.
This common law liability was first recognized in the landmark case of Rappaport v. Nichols, 31 N.J. 188, 156 A.2d 1 (1959). Applying fundamental negligence principles, the Supreme Court there held that a negligence cause of action would lie against a tavern owner where he serves an intoxicated patron who thereafter proximately causes injuries. In Soronen v. Olde Milford Inn, Inc., 46 N.J. 582, 218 A.2d 630 (1966), the establishment of this principle was reaffirmed, although the verdict for the plaintiff was reversed because the charge allowed the jury to find the tavern owner to have been negligent without considering whether or not he knew or should have known that the patron was intoxicated. Id. at 593-594, 218 A.2d 630.
*473 Our examination of this charge and the interrogatories submitted in connection therewith, leads us to conclude that they were erroneous in several respects. The trial judge first generally defined the principles of negligence and then undertook to define the common law negligence cause of action or "dram shop" rule enunciated in Rappaport.[2] In connection with the latter he cited the Division of Alcoholic Beverage Control (ABC) regulation prohibiting service of alcoholic beverages to an intoxicated person and then told the jury that a violation thereof only could be considered as "evidence" of negligence.
Our courts have emphasized that such negligence is established where it is proven that a tavern owner served an intoxicated person alcoholic beverages in circumstances where such seller knows or ought to have known that the patron is intoxicated. Anslinger, 121 N.J. Super. at 532, 298 A.2d 84. Thus, in order to resolve the question of negligent conduct the jury in this case basically had to determine only whether McGuinn's Place had sold beer to an intoxicated Moore when it knew or should have known that he was in that condition.
However, by injecting the ABC regulation into the case N.J.A.C. 13:2-23.1 the trial judge unnecessarily confounded that determination. Cf. Thompson, 216 N.J. Super. at 205, 523 A.2d 269. It is true that, in Rappaport and Soronen, the Court recognized the existence of such a regulation. But it is equally clear that the Rappaport Court relied upon that regulatory provision primarily to point out the existence of a "legislative policy" which was supportive of its conclusion there that such activity also constitutes common law negligence. Notwithstanding the usual admonition that the violation of such a regulation will constitute only "evidence of ... negligence" (Rappaport, 31 N.J. at page 203, 156 A.2d 1) it is settled that *474 the standard of conduct prohibited by the regulation also constitutes negligent behavior, independent of any violation thereof. In Soronen, 46 N.J. 582, 218 A.2d 630 (1966), the Supreme Court recognized this principle when it noted that a tavern owner is subjected to common law liability "despite the regulation." Id. at page 586, 218 A.2d 630. Thompson, 216 N.J. Super. at 210, 523 A.2d 269.[3] Thus, a jury ordinarily should be charged without reference to any regulation violation (although the terminology of "negligence per se" is not very helpful to a jury). The facts of this case did not warrant any mention of the regulation especially because of the explanation that a violation was only "evidence of negligence." The jury might have been misled because evidence of the elements necessary to prove liability against McGuinn's Place had been produced by plaintiff and therefore there was no need to inject the subject matter of the regulation.[4]
Moreover, we are compelled to also express our disapproval of the phrasing of the interrogatories in this case. R. 4:39-1 provides,
The court may require a jury to return only a special verdict in the form of a special written finding upon each issue of fact, in which case it may submit to the jury either written questions which can be categorically or briefly answered or written forms of the several special findings which might properly be made under the pleadings and evidence; or it may use such other method of submitting the issues and requiring written findings thereon as it deems appropriate. The court shall instruct the jury concerning the matters submitted as is necessary to enable it to make its findings upon each issue. If in so doing the court omits any issue of fact raised by the pleadings or by the evidence, each party waives his right to a trial by jury of the issues so omitted unless before the jury retires he demands its submission to the jury. The court may make a finding as to an issue omitted without such demand, or, if it fails to do *475 so, it shall be deemed to have made a finding in accord with the judgment on the special verdict.
See the extensive discussion in Bree v. Jalbert, 87 N.J. Super. 452, 209 A.2d 836 (Law Div. 1965), aff'd, 91 N.J. Super. 38, 219 A.2d 178 (App.Div. 1966), in which Judge Botter traced the history of R.4:39-1 and R. 4:39-2, authorizing the use of special verdicts and of a general verdict accompanied by answers to inter-rogatories, respectively. See also Nylander v. Rogers, 41 N.J. 236, 196 A.2d 1 (1963) explaining when such verdicts should be utilized and cautioning that a special verdict under [now] R.4:39-1 requires a "written finding upon each issue of fact in the case from which the judge forms and enters the resultant judgment." Id. at pages 240-241, 196 A.2d 1; Bleeker v. Trickolo, 89 N.J. Super. 502, 215 A.2d 571 (App.Div. 1965). The bottom line is that a court must be careful to avoid phrasing such questions inartfully, lest they encourage the return of inconsistent answers or operate to exclude some of the factual hypotheses upon which a general verdict is to be based. Pressler, Current N.J. Court Rules, Comment R. 4:39-1 and R.4:39-2. See also 5A Moore, Federal Practice, § 49-02 through § 49-04.
The trial judge prepared the verdict sheet based on the misleading language in the Model Civil Jury Charge 5.31. Instead of asking the jury to determine factually whether Moore was intoxicated and whether McGuinn's Place knew or ought to have known thereof, he phrased it in terms of whether McGuinn's Place was "negligent" in "serving" Moore when he was "intoxicated." Obviously, the term "negligence" in such a case necessarily includes all of the Anslinger elements, including that described in the second interrogatory. Since the jury answered only the first, they never went on to consider the elements described in the second one which asked if McGuinn's Place "knew, or should ... have known ... that ... Moore was intoxicated." Cf. Soronen, 46 N.J. at 585-589, 218 A.2d 630. In other words, by framing the first interrogatory as he did, the trial judge erroneously centered attention on the legal concept *476 of negligence but only alluded to some of the fact elements of such a cause of action. Again, the jury may have been confused or misled by such. Navarro, 211 N.J. Super. at 570-571, 512 A.2d 507.
We are cognizant of the practice wherein the jury is asked to return a verdict indicating only legal conclusions instead of resolving specific fact issues. For example, the jury may be asked to decide only questions framed in terms of negligence and proximate cause. Such practice is the equivalent of calling for the return of general verdicts. Ball v. N.J. Bell Telephone Co., 207 N.J. Super. 100, 114, 504 A.2d 29 (App.Div. 1986), certif. den., 104 N.J. 383, 517 A.2d 391 (1986). In this case, had the trial judge framed the interrogatories so as to elicit only the issues of fact as set forth in Anslinger, he could then have molded the consequent determination of "negligence" or lack thereof, on the part of McGuinn's Place. Alternatively, he could have instructed them to consider only the legal issues of negligence and proximate cause.
However, on this record we are unable to discern the basis for the jury's determination that McGuinn's Place was not "negligent." Did it find that McGuinn's Place did not serve Moore at all or, that it did not serve him when he was intoxicated? Moreover, did the jury consider whether McGuinn's Place knew or should have known of Moore's intoxication under the circumstances? This factor was included in the Court's charge as an element of the definition of negligence, however, it was to be separately considered according to the interrogatories.
We acknowledge that our responsibility is to examine a charge in its entirety to determine its overall effect. State v. Wilbely, 63 N.J. 420, 422, 307 A.2d 608 (1973), certif. granted, 63 N.J. 504, 308 A.2d 669 (1973).
So long as the law standing alone is stated correctly and intelligently, the ultimate test of the soundness of instructions is, not what the ingenuity of counsel can, at leisure, work out the instructions to mean, but how and in what sense, under the evidence before them and the circumstances of the trial, would *477 ordinary men and jurors understand the instructions as a whole. [Citation omitted].
The acid test is would the jury be misled. Vadurro v. Yellow Cab Co. of Camden, 6 N.J. 102, 107-108 [77 A.2d 459] (1950).
In this case, however, there was no direct proof that Moore was visibly intoxicated when he was served at McGuinn's Place. The only evidence which plaintiff did produce on this point was the extrapolated opinion evidence of the expert, Richard Zylman. On the other hand, the arresting officer testified that while Moore's speech was slurred, he was not loud, boisterous or rambling and that he was polite, cooperative and calm at the scene. Cf. Anslinger, 121 N.J. Super. at 533, 298 A.2d 84. Thus, the evidence of Moore's condition and its noticeability that night was crucial. Therefore, any confusion generated in resolving this issue was critical.
Geherty also urges that the trial court erred in instructing the jury that it "may" find McGuinn's Place to be negligent if the Anslinger elements had been found to have been proven. Our concurring colleague accepts this as a contention but disagrees that doing so is erroneous. However, we read that language in Rappaport and Soronen as merely ancillary to the common law policy the Court was adopting. We do not attempt to "rewrite" what those cases say but merely interpret them to mean that the Court used the permissive language in an effort to be careful lest anyone believe that a jury was required to find liability even where the proofs did not establish the necessary elements. Without further expounding on this issue, suffice it to say that the errors which we have previously discussed, when viewed with the misleading juxtaposition of the permissive "may" in the charge, lead us to conclude that this verdict may well have resulted in an unjust result, requiring a new trial concerning the liability of McGuinn's Place. See R. 2:10-2; Jenoff v. Gleason, 215 N.J. Super. 349, 521 A.2d 1323 (App.Div. 1987). We recommend that this model charge be reframed and that such permissive language be located and phrased in such a manner so as to underscore that it is *478 cautionary only in the sense indicated. We reiterate that if plaintiff demonstrates service to an underage or intoxicated patron and that the tavern owner knew or ought to have known thereof, such conduct constitutes negligence (per se) and the only remaining inquiry should be directed to the proximate cause element of such a claim.
In other words, we disagree with McGuinn's Place's contention that, even assuming that the charge was erroneous in minor respects, it effectively told the jury that McGuinn's Place was negligent if it found all of the elements outlined in Anslinger.
We also note that, at the argument on the motion for a new trial and at oral argument here, the parties raised the fact that no charge of respondeat superior had been given. Plaintiff even speculated that this may have been the reason for the jury's determination absolving McGuinn's Place. However, no request to charge such had ever been made and we prefer not to discuss that question on the merits. Nonetheless, we expect that the concept will be incorporated in the charge at the time of retrial.
Geherty also claims that the trial judge erred in submitting the issue of proximate cause to the jury.[5] While a finding that defendant McGuinn's Place served Moore when it knew or should have known that he was intoxicated amounts to actionable negligence, the law requires that such negligence also be a proximate cause of the accident. Rappaport, 31 N.J. at 203, 156 A.2d 1; Thompson, 216 N.J. Super. at 212, 523 A.2d 269. See also Jensen v. Schooley's Mountain Inn, 216 N.J. Super. 79, 81-82, 522 A.2d 1043 (App.Div. 1987), certif. den., 108 N.J. 181, 528 A.2d 11 (1987). Ordinarily, the question of proximate cause is left *479 to the jury for a determination. Rappaport, 31 N.J. at 203, 156 A.2d 1.
Contrary to plaintiff's assertions here, there was evidence to support a finding by the jury that the accident was not proximately caused by Moore's alleged intoxication but simply his negligent operation of the car. For example, Moore himself had insisted that the alcohol he had consumed did not influence his ability to drive at the time of the accident. Rather, he attributed the happening of the accident to his "wide-angling" in order to enter his driveway and the fact that the Geherty car was parked without lights in a spot that he did not expect. Moreover, the police indicated that Moore showed only some of the classical signs of impairment from the ingestion of alcoholic beverage. Thus, the issue of proximate cause was preeminently a question for the jury to determine and the trial judge did not err in submitting it to the jury. Parenthetically, we note that the jury never reached the issue of proximate cause in this case. Cf. Allen v. Rutgers, State University of New Jersey, 216 N.J. Super. 189, 195, 523 A.2d 262 (App.Div. 1987), certif. den., 107 N.J. 653, 527 A.2d 472 (1987).
Plaintiff also claims error regarding the trial judge's charge on foreseeability (although he apparently did not object to it below). The trial court charged the issue in classical terms. However, it went on to instruct that,
In this connection, you may consider that in current times, traveling by car to and from a tavern is commonplace, and you may consider that the effects of intoxication of a driver may reasonably be foreseen.
Thus, it was made clear to the jury that foreseeability was not a serious issue in this case. Accordingly, if there was any deficiency, we see no harmful error. R.2:10-2. Cf. Thompson, 216 N.J. Super. 202, 523 A.2d 269.
On its cross-appeal, McGuinn's Place argues that the jury's award of $80,000 in favor of plaintiff was clearly excessive. Generally, an award of damages is to be left to the sound discretion of the trier of fact, Endress v. Brookdale Community College, 144 N.J. Super. 109, 142, 364 A.2d 1080 (App.Div. 1976), and such awards should be upset for excessiveness only in clear cases. Fritsche v. Westinghouse Electric Corp., 55 *480 N.J. 322, 330, 261 A.2d 657 (1970). In Baxter v. Fairmont Food Co., 74 N.J. 588, 379 A.2d 225 (1977), our Supreme Court cautioned that, "... a trial judge should not interfere with the quantum of damages assessed by a jury unless it is so disproportionate to the injury and resulting disability shown as to shock his conscience and to convince him that to sustain the award would be manifestly unjust." Id. at 596, 379 A.2d 225.
There was conflicting evidence concerning the extent of plaintiff's injuries here. However, there was no evidence to dispute the contention that he now suffers some mental disability. Further, it was conceded that he had suffered some physical injuries and pain as a result of the accident. He produced evidence to indicate that he had to undergo extensive medical and chiropractic treatment and that he suffers from resultant permanent injuries. Both defendants emphasized the period of time between Geherty's visits to his various treating physicians and the fact that he has participated in some athletic activity. However, the jury apparently chose to place little weight on such evidence. Finally, the trial judge observed that the award did not shock his judicial conscience and further concluded that the jury had obviously accepted plaintiff's proofs concerning the extent of his injuries. In light of the conflicting evidence, we agree with his conclusions and likewise see no reason to disturb that portion of the verdict. Baxter, 74 N.J. 588, 379 A.2d 225 (1977).
In sum, we vacate the judgment in favor of McGuinn's Place and remand for a new trial on liability only as against it. Naturally that retrial will also implicate the crossclaims filed by both defendants in this case. Greenberg v. Stanley, 30 N.J. 485, 153 A.2d 833 (1959). However, we affirm the jury's award of $80,000 on the issue of damages. Cf. Coll v. Sherry, 29 N.J. 166, 148 A.2d 481 (1959).[6]
*481 D'ANNUNZIO, J.A.D. (concurring).
I concur in the reversal of the judgment in favor of McGuinn's Place on the ground that the first interrogatory failed to include as an element of negligence defendant's knowledge of Moore's intoxication. This was error necessitating a new trial as to McGuinn's Place's liability. See Soronen v. Olde Milford Inn, Inc., 46 N.J. 582, 593, 218 A.2d 630 (1966). The same error was included in the judge's instructions when he attempted, in recapitulation, to re-state the elements of the cause of action against McGuinn's Place. I find the charge to be otherwise correct and consistent with the principles announced in Rappaport v. Nichols, 31 N.J. 188, 156 A.2d 1 (1959):
If the patron is a minor or is intoxicated when served, the tavern keeper's sale to him is unlawful; and if the circumstances are such that the tavern keeper knows or should know that the patron is a minor or is intoxicated, his service to him may also constitute common law negligence. In view of the standard of conduct prescribed by the statute and the regulations, a tavern keeper's sale of alcoholic beverages when he knows or should know that the patron is a minor or intoxicated may readily be found by the jury to be imprudent conduct. [at 202-203, 156 A.2d 1]
Thus, I disagree with the majority's attempt to rewrite Rappaport because it is beyond our authority. But see Thompson v. Victor's Liquor Store, Inc., 216 N.J. Super. 202, 210, 523 A.2d 269 (App.Div. 1987).
I also concur in the affirmance of the damage award.
NOTES
[1] Apparently none of the Richard Roes mentioned in plaintiff's complaint were identified or served; the insurance benefits claim against New Jersey Manufacturers was "severed." Answers and Crossclaims for contribution and indemnification as between codefendants were filed by "Richard J. Moore" and "McGuinn's Place Inc., a New Jersey Corporation."
[2] We question whether such an extensive definition of the general principles of negligence was necessary in the circumstances of this case. A summary thereof would have been sufficient followed by a correct exposition of the elements of dram shop negligence action.
[3] We note also that the duty imposed by the ABC regulation does not articulate all of the elements imposed by the case law.
[4] In an appropriate case, where the evidence of a violation of such regulation becomes an issue, perhaps mention thereof may be relevant or helpful. Cf. Navarro v. George Koch Sons Inc., 211 N.J. Super. 558, 512 A.2d 507 (App.Div. 1986), certif. den., 107 N.J. 48, 526 A.2d 138 (1986), (indicating that a charge should be tailored to the facts of each case).
[5] Since we have not been furnished with the opening statements or the summations we do not know whether, as plaintiff alleges, McGuinn's Place ever contended that Moore's intoxication "was not a proximate cause of the accident" or that the accident "was not foreseeable." R.2:5-3(b).
[6] In light of the fact that this accident occurred on April 22, 1983, the provisions of the New Jersey Licensed Alcoholic Beverage Server Act, N.J.S.A. 2A:22A-1 et seq. (to take effect 90 days after June 25, 1987), do not apply by its terms. Consequently, we do not undertake to address the impact of that legislation on the principles enunciated herein. Additionally, no party has raised its applicability or even cited to it.