273 N.J. Super. 42 (1994)
640 A.2d 1194
FRAN GROSSMAN, PLAINTIFF-APPELLANT,
v.
CLUB MED SALES, INC.; CLUB MED, INC.; CLUB MEDITERRANEE, S.A.; CLUB MEDITERRANEE BAHAMAS, LTD.; AND HOLIDAY VILLAGE (PROVIDENCIALES, TURKS AND CAICOS), LTD., DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Submitted April 12, 1994.
Decided May 6, 1994.
*45 Before Judges SKILLMAN, KESTIN and WEFING.
Ball, Livingston & Tykulsker, attorneys for appellant (Stuart S. Ball and Susan Thal, of counsel and on the brief).
Cuyler, Burk & Matthews, attorneys for respondents (Edwin R. Matthews, Nancy Giacumbo and Michelle Grab, on the brief).
The opinion of the court was delivered by WEFING, J.S.C. (temporarily assigned).
Plaintiff commenced this lawsuit to recover damages for injuries she allegedly received following an incident that occurred while she was a guest at a Club Med facility. The case was partially tried but, for reasons which are immaterial to this appeal, a mistrial was declared. Following that mistrial, the defendants moved for summary judgment. The trial court granted the motion *46 and plaintiff has appealed to this court. We have concluded that the trial court erred in part and that the matter must, in consequence, be remanded for trial.

I.
In April of 1986, plaintiff Fran Grossman booked a week's vacation at a facility known as Club Med Turkoise ("Club") which is located on the Turks and Caicos Islands, within the British West Indies. Club Med Turkoise sits on more than forty acres of land fronting on a beach; it has 298 guest rooms together with various recreational and support facilities.
Ms. Grossman had never taken a Club Med vacation before. On the flight down, Ms. Grossman met Cynthia Weinstein who had stayed at other Club Med facilities in the past. The two women agreed to be roommates during their stay at the Club. When they arrived, they were assigned to Room 68 Florina and they made an agreement between themselves that the last woman to enter the room at night would lock the door from the inside.[1]
Plaintiff's second full day at the hotel was Sunday, April 13. After the day's activities, plaintiff had dinner and then went to the Club's disco lounge. She stayed there until approximately 2:30 a.m. When she returned to her room, her roommate was not there; plaintiff, however, retired. Her roommate arrived approximately a half-hour later; the two women talked briefly and then both went to sleep. Plaintiff later awoke to find a large black man, who had removed her sheet, standing next to her bed. His hands were on her body. He remained a period of time and then left the room. Plaintiff roused her roommate to tell her of the incident but was interrupted by the reappearance of the man. He identified himself as from security and said that he was just *47 checking. Plaintiff told him to go away and he left. Plaintiff placed the time at which she awoke at 5:30 a.m. Her roommate insisted that they had to report the incident. According to plaintiff, by the time the two women composed their nerves and got dressed, it was not until 6:15 a.m. that they left the room.
A former employee of the Club, Hymenaus Missick, was on the premises that evening.[2] He had worked as a security guard for approximately two months in 1985. His personnel file indicated that he had a "bad spirit" and that he was not to be re-hired.
Security guards were on duty at the time of the incident. They were aware that Hymenaus Missick had been at the disco but had not left through the Club's front gate after the disco closed. The guards looked for him but they did not locate him prior to this assault taking place. Missick was subsequently apprehended and admitted his involvement in the incident, together with his earlier entry into the room of another female guest, Sylvie Castonguay, at approximately 4:30 a.m. that same morning.
As noted at the outset, the original trial of this matter was not concluded and, following declaration of a mistrial, defendants moved for summary judgment. After hearing argument, the trial court concluded that the law of the Turks and Caicos Islands applied "to all substantive issues in this matter," and that, under that law, an innkeeper is not liable for an attack upon a guest in his inn. In the statement of reasons which the trial court appended to its order of July 2, 1992, the trial court relied upon 24 Halsbury's Laws of England § 1224 (4th ed. 1979), in support of the foregoing proposition. The trial court further concluded that under the law of the Turks and Caicos Islands, plaintiff would not be entitled to punitive damages.
The trial court was aware that plaintiff contemplated an appeal of its rulings and thus, in order to make a complete record, dealt *48 with the issue of whether defendants would be entitled to summary judgment under New Jersey law, if it were determined that New Jersey law governed the proceedings. The trial court concluded that defendants would be so entitled; it was of the view that plaintiff had not produced sufficient evidence for a jury to conclude that defendants knew or ought to have known of an unusual danger to the plaintiff and failed to take reasonable action to prevent her harm.[3] The trial court also concluded that the plaintiff had failed to establish evidence of proximate cause. We are satisfied that the trial court erred in these determinations and we thus reverse.

II.
The threshold issue is, of course, which law should be applied to adjudicate the plaintiff's claims against defendants  the law of New Jersey or the law of the Turks and Caicos. Plaintiff contends that the trial court erred in two respects: first, in concluding that the law of the Turks and Caicos applied to this matter, and second, in its interpretation of that law. We find it unnecessary to address the issue of whether the trial court was guided by a correct articulation of the law of the Turks and Caicos for we are of the view that, in the particular context of this matter, the question of defendants' potential liability for negligence should have been determined under New Jersey law.
New Jersey has, of course, adopted the flexible governmental-interest analysis approach to guide its consideration of choice-of-law decisions. Lieberman v. Port Authority, 132 N.J. 76, 622 A.2d 1295 (1993). Our Supreme Court has clearly set forth the analytical process which is involved in deciding which state has the greatest interest in having its law decide a particular issue and "[t]he first step in the analysis is to determine whether a conflict *49 exists between the law of the interested states." Veazey v. Doremus, 103 N.J. 244, 248, 510 A.2d 1187 (1986). This court recently reiterated that the initial step in choice-of-law questions is a determination whether there is a distinction in the laws of the particular jurisdictions. Bussell v. DeWalt Products Corp., 259 N.J. Super. 499, 512, 614 A.2d 622 (App.Div. 1992), certif. denied, 133 N.J. 431, 627 A.2d 1137 (1993); O'Connor v. Busch Gardens, 255 N.J. Super. 545, 548, 605 A.2d 773 (App.Div. 1992).
It is only after a determination is made that there is indeed an actual conflict between the laws of the particular jurisdictions that the interests of the respective jurisdictions are analyzed. "If an actual conflict exists, the next step is to identify the governmental policies underlying the law of each state and how those policies are affected by each state's contacts to the litigation and to the parties." Veazey v. Doremus, supra, 103 N.J. at 248, 510 A.2d 1187.
Here, the defendants asserted that the governing law was that of the Turks and Caicos Islands. Under the principle that a party who asserts an affirmative proposition has the burden of establishing that proposition, defendants had the burden of establishing that the law of the Turks and Caicos was, in fact, different from the law of New Jersey. Leary v. Gledhill, 8 N.J. 260, 84 A.2d 725 (1951). Defendants attempted to meet this burden by presenting to the court the certification of Adam S. Vaitilingam, an attorney who practices in the Turks and Caicos Islands. According to Mr. Vaitilingam, under the law of the Turks and Caicos, "[A] resort owner or innkeeper [has a duty] to its guests ... to take such care as in all the circumstances is reasonable to ensure that its guests will be reasonably safe while using the premises."
New Jersey has, upon several occasions, addressed the duty of an innkeeper or hotel keeper to its guests. This court has stated that "[a] lodging house or rooming housekeeper, like the owner or operator of a hotel, is not an insurer of the safety of his guests. He is, however, required to exercise ordinary care to render the premises reasonably safe for their use." Johnson v. Kolibas, 75 *50 N.J. Super. 56, 64, 182 A.2d 157 (App.Div.), certif. denied, 38 N.J. 310, 184 A.2d 422 (1962). Although that case involved a claim for injuries following a fire, rather than a claim for injuries suffered as the result of the actions of a third party, we do not believe that that distinction should affect the duty of care which is owed. Thus, the United States District Court, relying on Johnson v. Kolibas, supra, and applying New Jersey law, has concluded that a hotel may be liable to its guests for injuries they received during the course of a robbery on its premises. Nebel v. Avichal Enterprises, Inc., 704 F. Supp. 570 (D.N.J. 1989). In Nebel, the court concluded that the issue to be determined was "`whether, under all the circumstances, the innkeeper ... provided for its guests reasonable protection against injuries from criminal acts.'" Id. at 576 (quoting Courtney v. Remler, 566 F. Supp. 1225, 1233 (D.S.C. 1983)).
We do not perceive a substantive distinction between this articulation of an innkeeper's duty and that set forth by Mr. Vaitilingam. We thus conclude that the trial court erred when it proceeded to the second step in the choice-of-law analysis and considered the competing governmental interests. Since defendants did not establish an actual difference between the law of New Jersey and the law of the Turks and Caicos as to an innkeeper's duty to its guests, the court had no need to engage in that analysis. No conflict having been established, the court should have applied the law of New Jersey on the issue of the innkeeper's duty.
Before proceeding to a discussion of the trial court's conclusions about defendants' liability under New Jersey law, a few additional comments must be made in the area of choice of law. The order which the trial court entered in this matter directed that the law of the Turks and Caicos Islands would govern "all substantive issues" in the case. Such an all-encompassing determination was unnecessary and unwarranted at that stage of the matter. Choice-of-law questions are to be determined "on an issue-by-issue basis." Veazey v. Doremus, supra, 103 N.J. *51 at 248, 510 A.2d 1187. "In order to determine which state has the greatest interest in the application of its own law, each issue must be analyzed separately." White v. Smith, 398 F. Supp. 130, 134 (D.N.J. 1975). This is so because the interests of the competing jurisdictions may differ, both in their nature and their weight, depending upon which issue is at hand. It is thus conceivable that the law of one jurisdiction may apply to one issue in a matter and the law of a second jurisdiction to another. We do not decide that that result will occur here; we only note that it is possible.

III.
We turn now to the trial court's conclusion that, even if the law of New Jersey were to apply, defendants would be entitled to judgment. The trial judge determined that there was no evidence of prior actions or conduct which would make the assault upon the plaintiff foreseeable. We disagree with the trial court's findings in this regard. There was evidence that approximately two months prior to the assault upon the plaintiff, two disgruntled employees had damaged the Club's restaurant and entered five guest rooms and stolen a number of items. The trial court concluded that since this earlier incident did not involve physical harm to a guest, it did not put the Club on notice that either present or former employees could pose a physical threat to its guests. The fact that the rooms entered were unoccupied at the time of the incident appears, from the record on appeal, to have been wholly fortuitous. An unauthorized entry into a guest's room always carries with it a risk of physical confrontation if the guest is in that room.
Here, the Club knew that Hymenaus Missick, an ex-employee whom it considered to have a "bad spirit" had not left its premises after the disco closed at 3:30 a.m. Indeed, the fact that he may have remained on the Club's property was of concern to security personnel for they were searching for him, albeit unsuccessfully. Whether the actions of the Club were reasonable under the circumstances which existed should have been left for the jury to resolve.
*52 The trial court also was of the view that the incident in the room of Sylvie Castonguay was so close in time to the assault on Fran Grossman that, as a matter of law, there was insufficient notice to the Club. Again, we think the court erred. According to Castonguay, the intrusion into her room occurred around 4:30 a.m. She reported the incident to the manager of the Club (called the Village Chief) within some twenty minutes, that is, at approximately 4:50 a.m. We consider that it was up to the jury to determine whether the Club had sufficient notice and whether the actions which it took were reasonable under these circumstances.
The trial court also concluded that plaintiff had failed to establish that any negligence on the part of the defendants was a proximate cause of plaintiff's injuries. Proximate cause is, ordinarily, a factual issue. Geherty v. Moore, 238 N.J. Super. 463, 478-79, 570 A.2d 29 (App.Div. 1990), appeal dismissed, 127 N.J. 287, 604 A.2d 110 (1991). There was no reason to depart from that principle here. Whether plaintiff's proofs were insufficient to establish proximate cause was a determination for the jury to make based upon the entirety of the record. The trial court discounted, for instance, the opinion of plaintiff's expert that the lock on plaintiff's door was insufficient. It was up to the jury, however, to decide the value of that opinion.
We note that although the court had the benefit of hearing actual testimony at the incomplete trial, defendants' motion, even if presented after that, remained a motion for summary judgment. As such, it should have been decided under the well-known standards governing such motions which require that "[a]ll inferences of doubt are drawn against the moving party and in favor of the opponent of the motion." Shanley & Fisher, P.C. v. Sisselman, 215 N.J. Super. 200, 211, 521 A.2d 872 (App.Div. 1987).

IV.
Plaintiff presents two final arguments in this appeal. She contends that the trial court erred in dismissing her claim for punitive damages and also in granting summary judgment to *53 defendant Club Med Sales, Inc. We are satisfied that the trial court was correct in both of those determinations.

A.
In dismissing the claim for punitive damages, the trial court relied upon the certification of Adam Vaitilingam, referred to earlier. According to Mr. Vaitilingam, punitive damages are recoverable under the law of the Turks and Caicos only in three circumstances:
a. where the plaintiff has been the victim of an oppressive, arbitrary or unconstitutional action by servants of government;
b. where the defendant's conduct has been calculated to make himself a profit exceeding the compensation payable to the plaintiff; or
c. where authorized by statute.
The law of New Jersey is to the contrary and thus the court would, ordinarily, be confronted with the necessity of conducting a governmental interest analysis to determine which law should govern. We are satisfied, however, that such an analysis was immaterial for even under the broader standards governing an award of punitive damages under New Jersey law, the evidence presented by the plaintiff simply fails to establish that defendants' conduct reached the requisite threshold of wantonly reckless or malicious. Allendorf v. Kaiserman Enterprises, 266 N.J. Super. 662, 675, 630 A.2d 402 (App.Div. 1993).

B.
Prior to the commencement of this trial, defendants made an earlier motion for summary judgment which was granted as to one defendant, Club Med Sales, Inc. Plaintiff argues now that this was error. Plaintiff relies upon the intertwined nature of the defendants' corporate structure and activities; she argues that Club Med Sales, Inc., is the sales arm of Club Med, Inc., and is thus responsible for promoting and selling vacation packages to New Jersey residents. It was those sales efforts, plaintiff urges, which led her to select this vacation in the first instance. Plaintiff *54 asserts that she has a breach of contract action against Club Med Sales, Inc., which she should be allowed to prosecute.
We are not persuaded by these contentions. After her return home, plaintiff wrote and complained of this incident and received a full refund of her money. We do not consider that plaintiff would have a claim for damages for breach of contract beyond that. To the extent plaintiff may have a claim against these defendants, it lies in tort. Plaintiff failed to establish that there was any factual issue pertaining to negligence on the part of Club Med Sales, Inc.
Reversed in part and affirmed in part; remanded for trial.
NOTES
[1] In accordance with its policy of promoting care-free vacations, Club Med did not supply guests with keys to lock their rooms from the outside. Both woman were aware of this policy and knew that their room could only be locked once they were inside.
[2] One of the requirements of the Turks and Caicos Islands, as part of the grant of permission to establish this resort, was that the Club permit islanders to use the restaurant and disco, upon making proper reservations.
[3] By the time the mistrial was declared, plaintiff had presented all of her case save for the testimony of two witnesses. Defendants requested that the court bifurcate the matter and try the issue of liability only, rather than declare a mistrial. The court, exercising its discretion, refused to do so.