

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

12-18-2006

# Lebegern v. Forman

Precedential or Non-Precedential: Precedential

Docket No. 05-1992

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Lebegern v. Forman" (2006). *2006 Decisions.* Paper 9.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/9

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 05-1992

———————

JEAN L. LEBEGERN, Administratrix Ad Prosequendum and
Administratrix for the Estate of Daniel L. Carson, Deceased;
JANET GOLONKA; INSURANCE COMPANY

v.

GLENN FORMAN, INDIVIDUALLY and t/a FORMAN'S
AUTO BODY a/k/a FOREMAN'S AUTO, a/k/a FORMAN'S
COLLISION CENTER a/k/a FORMAN'S SERVICE
CENTER; STEPHEN J. CRACKER; MICHAEL J. WEISS,
an Adult Individual, Individually and t/a MIKE'S TRUCK
CENTER AND GOOD TIME CYCLES; KENNETH W.
ALBERT, t/a GOOD TIME CYCLES

Jean L. Lebegern,

Appellant

———————

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 02-cv-05598)
District Judge: Honorable Jerome B. Simandle

———————

Argued on January 12, 2006

Before: FUENTES, ROSENN* and ROTH**, <u>Circuit Judges</u>.

(Opinion Filed: December 18, 2006)

Michael T. Sellers, Esquire **(Argued)**
Marc I. Rickles, Esquire
Kardos, Rickles, Sellers & Hand
626 South State Street
Newtown, PA  18940

      Counsel for Appellant

Ian M. Sirota, Esquire **(Argued)**
Margolis Edelstein
216 Haddon Avenue

---

  *This case was submitted to the panel of Judges Roth, Fuentes and Rosenn.  Judge Rosenn died after submission, but before the filing of the opinion.  The decision is filed by a quorum of the panel. 28 U.S.C.§46(d).

  **Judge Roth assumed senior status on May 31, 2006.

P.O. Box 92222
Westmont, NJ  08108

> Counsel for Appellees Glen Forman,
> Forman's Auto Body, a/k/a Forman's
> Auto, a/k/a Forman's Collision Center
> a/k/a Forman's Service Center

Bonnie L. Laube, Esquire **(Argued)**
Greenblatt & Laube, Esquire
200 North 8th Street
P.O. Box 883
Vineland, NJ  08362

Thomas M. Marrone, Esquire
Feldman, Shepherd, Wohlgelernter
Tanner & Weinstock
1845 Walnut Street, 25th Floor
Philadelphia, PA  19103

> Counsel for Appellee Stephen J. Cracker

Gary A. DeVito, Esquire
Zarwin, Baum, DeVito, Kaplan, Schaer & Toddy
1515 Market Street, Suite 700
Philadelphia,  PA  19102

> Counsel for Amicus-Curia

---

OPINION

---

**ROTH**, <u>Circuit Judge</u>

We granted an interlocutory appeal to resolve a choice of law issue under New Jersey choice of law principles. We must determine whether the measure of damages in a survival action on behalf of a Pennsylvania decedent, arising from a motor vehicle accident in New Jersey allegedly caused by the negligence of a New Jersey driver, is governed by New Jersey or Pennsylvania law. The District Court concluded that New Jersey law governed but stayed the case pending an interlocutory appeal. We will affirm the District Court's application of New Jersey law and will remand this case for further proceedings consistent with this opinion.

## I. Factual Background and Procedural History

On September 16, 2001, Daniel L. Carson was driving his vehicle on Route 30, White Horse Pike, in Mullica Township, New Jersey. Carson was accompanied by his fiancee, Janet Golanka. Carson and Golanka lived in Bucks County, Pennsylvania, and drove to New Jersey for a shopping trip. During their journey, a vehicle driven by Stephen J. Cracker crossed the center line and hit the vehicle driven by Carson. Carson was killed and Golonka sustained serious injuries.

4

Jean L. Lebegern is Carson's mother and the personal representative of his estate. She brought survival and wrongful death actions in federal district court in New Jersey against Cracker, Glenn Forman, Michael Weiss, Kenneth Albert, and Good Time Cycles. Forman is a licensed New Jersey car dealer alleged to have been the owner of the vehicle operated by Cracker. Forman purchased the vehicle from Weiss, who was purportedly acting at the behest of Albert and/or Good Times Cycles. All of the defendants were residents of New Jersey at the time of the accident.

Count II of Lebegern's Amended Complaint is a claim under the Pennsylvania Survival Act. Cracker filed a motion to dismiss Count II on the ground that the New Jersey Survival Act, not the Pennsylvania Survival Act, applies here. Lebegern filed a cross motion for summary judgment asking the District Court to find that Pennsylvania law governs the survival claim. The District Court granted Cracker's motion to dismiss, finding that New Jersey law does apply.[1]

The reason for the dispute over choice of law is that the New Jersey Survival Act allows recovery only for the decedent's pain and suffering, while the Pennsylvania Survival Act also provides for recovery of net earning capacity. Compare

---

[1]Cracker argues that in granting the motion to dismiss the District Court did not hold that New Jersey law applied but rather that Pennsylvania law did not apply. Contrary to Cracker's assertion, the District Court flatly stated that "the New Jersey Survival Act will apply herein." Lebegern v. Forman, 339 F. Supp. 2d 613, 622 (D.N.J. 2004).

5

N.J. STAT. ANN. § 2A:15-3 <u>with</u> 20 PA. CONS. STAT. ANN. § 3371 <u>and</u> 42 PA. CONS. STAT. ANN. § 8302; <u>Skoda v. W. Penn Power Co.</u>, 191 A.2d 822, 829 (Pa. 1963).[2]

## II. Jurisdiction and Standard of Review

Lebegern filed her Petition for Leave to Appeal from an Interlocutory Order on February 3, 2005, pursuant to 28 U.S.C. § 1292(b). On March 23, 2005, we granted leave to appeal.

The District Court had diversity jurisdiction under 28 U.S.C. § 1332. We have jurisdiction under 28 U.S.C. § 1292(a)(1). <u>United States v. Acorn Tech. Fund, L.P.</u>, 429 F.3d 438, 442 (3d Cir. 2005), and exercise plenary review over a district court's choice of law determination. <u>Petrella v. Kashlan</u>, 826 F.2d 1340, 1343 (3d Cir. 1987). As this was a diversity case filed in New Jersey, New Jersey choice of law rules govern. <u>Berg Chilling Sys., Inc. v. Hull Corp.</u>, 435 F.3d 455, 462 (3d Cir. 2006) (citing <u>Klaxon Co. v. Stentor Elec. Mfg. Co.</u>, 313 U.S. 487, 496 (1941)).

## III. Discussion

---

[2]Under New Jersey law, the net lost earnings of the decedent, which the decedent's family might reasonably have expected to receive, are recoverable under the New Jersey Wrongful Death Act, N.J. STAT. ANN. § 2A:31-1 *et seq*.

## A. General Choice of Law Principles in New Jersey

New Jersey has a flexible governmental-interest approach to resolving choice of law questions that "requires application of the law of the state with the greatest interest in resolving the particular issue . . .." Gantes v. Kason Corp., 679 A.2d 106, 109 (N.J. 1996); Veazey v. Doremus, 510 A.2d 1187, 1189 (N.J. 1986). The Restatement (Second) of Conflict of Laws, which the New Jersey Supreme Court has cited as guiding the choice of law determination, uses an issue-by-issue approach. Erny v. Estate of Merola, 792 A.2d 1208, 1213 (N.J. 2002) (citing Restatement (Second) of Conflict of Laws § 145(1) (1971)). Damages issues are included in the issue-specific analysis, and the law that applies is based on the state with the dominant policy interest. Id. To apply the governmental-interest analysis, it is necessary to analyze the purposes underlying the competing state laws. Id. at 1214 (citing Restatement (Second) of Conflict of Laws § 6). There is a presumption that the law of the situs state applies. When another state has the more significant interest and the policies of the situs state will not be frustrated by the application of foreign law, however, the presumption can be overcome. Id. at 1216.

The governmental-interest test consists of two prongs. First, we must determine whether there is an actual conflict. Gantes, 679 A.2d at 109. If there is not an actual conflict, the inquiry is over and, because New Jersey would apply its own law in such a case, a federal court sitting in diversity must do the same. See Curtis T. Bedwell & Sons, Inc. v. Geppert Bros., Inc., 655 A.2d 483, 484-85 (N.J. Super. 1995) (explaining "false conflict" situation) (citing Gilbert Spruance v. Pa. Mfrs. Ass'n

7

Ins. Co., 629 A.2d 885 (N.J. 1993)). The second prong of the governmental-interest test requires us to assess the interests each state has in applying its own law and determine which state has the most significant relationship to the parties and the event. Fu v. Fu, 733 A.2d 1133, 1138 (N.J. 1999). To effectuate this analysis, we "identify the governmental policies underlying the law of each state and how those policies are affected by each state's contacts to the litigation and the parties." Veazey, 510 A.2d at 1189 (citing Henry v. Richardson-Merrell, Inc., 508 F.2d 28, 32 (3d Cir. 1975)). If the state's concerns with the litigation and the parties are not directed at the policies involved in the case before the court, the state has no interest in applying its law. Id. at 1190.

New Jersey has articulated five broad factors to aid courts in applying the governmental-interest test. Erny, 792 A.2d at 1217. They include (1) interstate comity, (2) the interests of the parties, (3) the interests underlying the substantive body of law, (4) the interests of judicial administration, and (5) the competing interests of the states. Fu, 733 A.2d at 1140-41 (citing Restatement (Second) of Conflict of Laws § 145 cmt. b). The fifth factor is the most important. Erny, 792 A.2d at 1217.

In addition to these general considerations, four contacts are most relevant to the governmental-interest test in cases based on an alleged tort: (1) the place where the injury occurred, (2) the place where the conduct causing the injury occurred, (3) the domicile, residence, nationality, place of incorporation, and place of business of the parties, and (4) the place where the relationship, if any, between the parties is centered. Fu, 733 A.2d at 1142 (citing Restatement (Second) of Conflict of Laws

8

§ 145(2)).

> In personal injury cases, the place of the injury is important, and when both the conduct and the injury occur in the same place, that jurisdiction's law generally will apply except in those rare instances where another jurisdiction has a demonstrably dominant interest and no policy of the situs state is frustrated by application of the sister state's policy.

Erny, 792 A.2d at 1217-18 (citing Restatement (Second) of Conflict of Laws § 145 cmt. e; § 146 cmts. c and d).

### B.  Applying New Jersey's Choice of Law Principles

#### 1.  Actual Conflict

Under New Jersey choice of law principles, we must first establish whether there is an actual conflict.  We agree with the District Court that there is.  The New Jersey Survival Act would allow Lebegern to recover only for Carson's pain and suffering from the time of alleged negligence until death.  N.J. STAT. ANN. § 2A:15-3.[3]  Pollock v. Barrickman, 610 F. Supp. 878, 879

---

[3]New Jersey's Survival Act states:

> Executors and administrators may have an action for any trespass done to the person or property, real or personal, of their testator or intestate against the trespasser, and recover their damages as their testator or intestate would have had if he was living.

9

(D.N.J. 1985) (explaining how New Jersey courts have construed the New Jersey Survival Act). In contrast, Pennsylvania's Survival Act permits the estate of the decedent to recover prospective net earnings as well as damages for pain and suffering. 20 PA. CONS. STAT. ANN. § 3371;[4] 42 PA. CONS. STAT. ANN. 8302;[5] Skoda, 191 A.2d at 829.

Our review of the jurisprudence in this area has uncovered a misconception by some courts of the proper way to conduct an analysis of whether there is an actual conflict of law under this two pronged approach. What some courts have described as a "false conflict" is the result of a policy analysis

---

> In those actions based upon the wrongful act, neglect, or default of another, where death resulted from injuries for which the deceased would have had a cause of action if he had lived, the executor or administrator may recover all reasonable funeral and burial expenses in addition to the damages accrued during the lifetime of the deceased.

[4]20 PA. CONS. STAT. ANN. § 3371 provides: "All causes of actions or proceedings shall survive as provided by [42 PA. CONS. STAT. ANN. § 8302] (relating to survival action)."

[5]42 PA. CONS. STAT. ANN. § 8302 provides: "All causes of action or proceedings, real or personal, shall survive the death of the plaintiff or of the defendant, or the death of one or more joint plaintiffs or defendants."

to determine which state has the more significant interest in applying its law, which preceeds the examination of whether there is an actual conflict in the application of the laws. The better approach is to determine whether there is a conflict by examining the substance of the laws before assessing whether the states' interests are actually furthered by application of the potentially applicable doctrines. "[T]he initial step in choice-of-law questions is a determination of whether there is a distinction *in the laws* of particular jurisdictions." Grossman v. Club Med Sales, Inc., 640 A.2d 1194, 1197-98 (N.J. Super. 1994) (emphasis added). The competing states' interests in the application of their laws are not assessed until after the basic conflict question is answered. Id. at 1198 (citing Veazey, 510 A.2d at 1189-90).

In Grossman, the New Jersey Superior Court reversed a trial court's choice of law determination after the Superior Court concluded that there was no conflict between the laws of the potentially interested jurisdictions. Id. The court conducted its analysis by examining the substance of the potentially applicable laws to assess whether they mandated different outcomes. Id. at 1197-98. Similarly, first in Gantes and later in Erny, the New Jersey Supreme Court looked first to the substance of potentially applicable laws to conclude that actual conflict existed. In Gantes, the question was whether the Georgia or New Jersey statute of limitations law should apply. 679 A.2d at 109. The court quicky disposed of the conflicts prong of the governmental interest test by noting that there was "an obvious and direct conflict between Georgia's ten-year statute of repose and New Jersey's two-year statute of limitations." Id. The Erny court also concluded its conflicts

11

analysis by a review of the substance of the laws. The court found that an actual conflict existed between New Jersey and New York joint and several liability laws after explaining how applying one jurisdiction's law over another's would impact the outcome. 792 A.2d at 1216. It was not until the second prong of the governmental interest test – assessing the interests of each jurisdiction – that the New Jersey Supreme Court entered into an in-depth discussion of the impact of the respective states' underlying policy goals and intent. Id. at 1217-19.

The district courts in our Circuit are split in their determination of the choice of law issue in survival actions, as we have here. An examination of case law indicates, however, that the significant factor in the disagreement is the point in the analysis at which the court considers whether or not there is a conflict in the states' interests. The cases, which have considered the second prong of the New Jersey test (the state interest) before the first (the existence of an actual conflict in the application of the laws) have found at the outset no conflict of state interests. On this basis, they have applied the Pennsylvania Survival Act. In Pollock, 610 F. Supp. at 881, the court found a "false conflict" because of the nature of the state interest; Pennsylvania had a strong interest in the administration of its decedents' estates whereas New Jersey had no interest in the administration of the estates of non-resident decedents. The court stated "because we do not believe the Survival Act was enacted with resident defendants in mind, but only in the interests of resident decedents, we believe that the facts of this case present a false conflict." Id. at 881.

As the above discussion of New Jersey precedent shows,

12

this formulation is technically inaccurate. While the District Court in Pollock was certainly within its purview to reach the issue of state interest, the determination of whether or not there is a conflict of states' interests is properly understood as being a second-prong issue. Grossman, 640 A.2d at 1197-98. The only other district court holding that Pennsylvania's Survival Act applied in this context also conducted an interests analysis. Foster v. Maldonado, 315 F. Supp. 1179 (D.N.J. 1970); see also Mathis v. Motley, 649 F. Supp. 38, 40 (D.N.J. 1986) (applying Pennsylvania law to an accident in Florida between a New Jersey defendant and a Pennsylvania plaintiff).

On the other hand, the district courts to hold that New Jersey law applied found a conflict in the respective Survival Acts and then a conflict in state interests. Capone v. Nadig, 963 F. Supp. 409, 412-13 (D.N.J. 1997); Amoroso v. Burdette Tomlin Mem'l. Hosp., 901 F. Supp. 900, 902 (D.N.J. 1995); Cannon v. Hilton Hotels Corp., 664 F. Supp. 199, 202 (E.D. Pa. 1987) (applying Pennsylvania choice of law rules to hold that New Jersey's Survival Act applied in case involving an accident in New Jersey with New Jersey resident defendants and a Pennsylvania resident decedent); Colley v. Harvey Ceders Marina, 422 F. Supp. 953, 957 (D.N.J. 1976).

Because New Jersey and Pennsylvania survival laws differ on the scope of damages, there is a true conflict between the laws of each potentially interested jurisdiction. This, however, is only the first prong of the inquiry. It triggers the second part of the governmental-interest test, the determination of the policies underlying each state's laws and whether those policies are implicated by applying the relevant state's law to

13

the particular issue.  <u>Erny</u>, 792 A.2d at 1216-21.

## 2.  Resolving the Conflict:  Finding the More Interested State

Determining which state has the greater interest involves looking at each state's contacts to the litigation and assessing the policies behind each state's law.  <u>Id.</u> at 1216. To facilitate this analysis, we can summarize the most relevant contacts as follows:

(1) Place where the injury occurred:  New Jersey

(2) Place where the conduct causing the injury occurred:  New Jersey

(3) Domicile and residence of the parties:

(a) Plaintiff:  Pennsylvania

(b) Defendants:  New Jersey

As mentioned above, when both the place of injury and the conduct causing the injury are the same, the general approach is to apply the law of the jurisdiction where the injury occurred. <u>Id.</u> at 1217-18 (citing Restatement (Second) of Conflict of Laws § 145 cmt. e; § 146 cmts. c and d).

Having identified the most relevant contacts, it is necessary to determine which state has the most significant relationship to the occurrence and parties.  <u>Id.</u> at 1218.

14

Evaluating the competing interests of the states is the most important aspect of the analysis used in determining the jurisdiction with the most significant relationship. Id. at 1217. Pennsylvania has a strong and clear interest in providing full recovery in survival actions. The Pennsylvania Supreme Court has said that, when it is the domicile of the decedent and his family, the state is "vitally concerned with the administration of [the] decedent's estate and the well-being of the surviving dependents to the extent of granting full recovery, including expected earnings." Griffith v. United Air Lines, Inc., 203 A.2d 796, 807 (Pa. 1964). The federal courts faced with choice of law issues in this context have all recognized Pennsylvania's important interest in securing an adequate recovery. E.g., Amoroso, 901 F. Supp. at 905.

The majority of federal courts to address the issue have held that New Jersey also has an interest in applying its Survival Act under these circumstances because it would limit New Jersey defendants' exposure to damage awards. E.g., Capone, 963 F. Supp. at 413. ("I concur with the vast majority of cases in finding that, the New Jersey Legislature, in providing for such limited recovery under the Survival Act, 'was expressing its interest in protecting New Jersey defendants.'") (quoting Mathis v. Motley, 649 F. Supp. 38, 40 (D.N.J. 1986)). In discussing a choice of law issue involving New Jersey's Wrongful Death statute, we stated that "[i]nasmuch as [the statute] sets forth the type of damages that may be recovered in a wrongful death action, it reflects the New Jersey Legislature's determination both of what is fair for a plaintiff to recover and a defendant to pay in such a case." Petrella, 826 F.2d at 1343. The principle, observed in Petrella, that when a statute details the nature and

15

extent of damages recoverable in a wrongful death action, it reflects the legislature's concern for both plaintiffs and defendants, applies here as well – even though this case is addressed under the New Jersey Survival Act.

To the extent that the purposes behind the New Jersey Survival Act have been discussed, it appears that the Act was part of a comprehensive scheme of recovery to work in concert with the Wrongful Death Act to ensure proper redress by next of kin and the estate of the deceased following a tort leading to death. See Smith v. Whitaker, 734 A.2d 243, 249-50 (N.J. 1999). However, the interests of defendants appear also to be a concern of the New Jersey Legislature because the Survival Act was structured to avoid allowing multiple recoveries for the same loss. Alfone, 403 A.2d at 15. When a legislature creates such a damages scheme, it is considering the interests of both those who receive and those who pay. Thus, we conclude that one of the purposes of the Survival Act was to protect defendants. See Petrella, 826 F.2d 1343; Alfone v. Sarno, 403 A.2d 9, 15 (N.J. Super. 1979) (noting "strong policy against recovery of duplicate damages" under New Jersey's Wrongful Death and Survival Acts).[6]

Pennsylvania, on one hand, has expressed a strong interest in affording recovery to plaintiffs in Survival Act cases

---

[6]New Jersey's Wrongful Death Act, N.J. STAT. ANN. § 2A:31-1 et seq., seeks to compensate survivors "for the pecuniary loss [they] suffer as a result of the death of the decedent." Capone, 963 F. Supp. at 414 (quoting Lovely v. Rahway Hosp., 548 A.2d 242, 244 (N.J. Super. 1988).

16

involving a Pennsylvania decedent. New Jersey, on the other hand, has an interest in protecting both New Jersey plaintiffs *and* New Jersey defendants by applying its Survival Act in the context of the broader New Jersey remedial scheme. See Smith, 734 A.2d at 249-50. In this case, each state's interests would be furthered by application of its law because there is a Pennsylvania decedent and New Jersey defendants. As discussed, New Jersey permits plaintiffs to recover loss of support (determined in part by expected earnings) in wrongful death claims. Id. at 248 ("The amount of recovery is based upon the contributions, reduced to monetary terms, which the decedent might reasonably have been expected to make to his or her survivors."). Lost earnings, however, are not cognizable in New Jersey Survival Act cases. Pollock, 610 F. Supp. at 881. Pennsylvania, on the other hand, allows wrongful death claims by parties other than the estate *and* permits the estate to recover lost earnings for itself. Frey v. Pa. Elec. Co., 607 A.2d 796, 798 (Pa. Super. 1992). We are thus presented with a situation in which both states' policies would be furthered by the application of their law and each state's interests frustrated by the application of the other state's law.

In weighing the interests, our holding in Broome v. Antlers' Hunting Club, 595 F.2d 921 (3d Cir. 1979), is informative. In that case, an executor of a New York decedent who died in Pennsylvania sought the application of the Pennsylvania Survival Statute in a case against a Pennsylvania defendant. We applied Pennsylvania's choice of law rules and held that Pennsylvania law, rather than New York law, applied. We considered the respective interests of the states and concluded that "New York's interest in applying its law of

17

damages to its resident who chose to vacation in Pennsylvania would weigh lightly on the qualitative scale compared with Pennsylvania's policy of compensating tort victims when that state is the place of the tortious impact." Id. at 925. Because New Jersey and Pennsylvania have similar choice of law tests, Cannon, 664 F. Supp. at 200-01 (citing Henry v. Richardson-Merrell, Inc., 508 F.2d 28, 32 (3d Cir. 1975)), applying that reasoning to this case counsels in favor of applying New Jersey law here.

When each state is interested in the application of its laws and the application of the foreign state's law would frustrate the purposes of the forum state, the presumption is to apply the law of the forum. Erny, 792 A.2d at 1217-18; Colley, 422 F. Supp. at 957 ("The law of the forum should be applied even though a foreign state also has an interest in the application of its contrary policy.") (footnote omitted). For example, in Petrella, we held that New Jersey's wrongful death law applied rather than Florida's law in a case involving the death of a Florida resident allegedly caused by New Jersey resident doctors practicing in New Jersey. 826 F.2d 1343. We noted that Florida was interested because the plaintiff was from that state, and "thus Florida obviously has a legitimate interest in the quantum of damages for his death being fixed under Florida law." Id. With respect to New Jersey, the forum state, it was interested because the alleged tort took place in New Jersey and was allegedly committed by New Jersey residents. Id. After noting that both states were interested, we concluded that "New Jersey's interest in this case is no less than Florida's and the judge correctly held that its law of damages should be applied." Id.

18

Other choice of law norms also counsel in favor of applying New Jersey law in this case. When a person chooses to travel across state lines, he should expect the laws of the place in which he is located to govern his transactions. "By entering the state . . . the visitor has exposed himself to the risks of the territory and should not expect to subject persons living there to a financial hazard that their law had not created." Colley, 422 F. Supp. at 957 (citing D.F. Cavers, The Choice-of-Law Process 146-47 (1965)). For this reason, the place of injury takes on special significance "where, as here, the place where the injury occurred was not fortuitous . . .." Blakesley v. Wolford, 789 F.2d 236, 243 (3d Cir. 1986). In this case, Carson and Golonka's trip to New Jersey was part of a planned shopping excursion and, thus, it cannot be considered a fortuity that they found themselves on New Jersey's roadways. In light of the fact that both New Jersey and Pennsylvania are interested, and the fact that general notions of comity militate toward applying the law of the state where the accident occurred when the defendants are residents of that state, we hold that a New Jersey court would apply New Jersey law in this case.

Lebegern, however, focuses on the decision in Pollock, where the District Court stated "this court believes that, when enacting the statute, the New Jersey Legislature was principally, if not solely, concerned with the plight of the decedent and his estate, not with the defendant tort-feasor." 610 F. Supp. at 880. The court concluded, based on legislative history and common law principles, that the New Jersey Survival Act was simply the closing a loophole to prevent duplicative recovery. Id. at 881. Because the Death Act of 1848 allowed next of kin to recover for lost future wages, the court concluded that the Legislature

19

"did not believe it was fair or necessary to also allow this recovery to the estate . . .." Id.; Contrary to the conclusion drawn in Pollock, however, we believe the desire to close a loophole in damages does express an interest in protecting defendants. Indeed, it is anomalous to speak of an intent to structure damages and conclude that defendants, who are to pay the awards, were not on the mind of the legislature. Petrella, 826 F.2d at 1343.

Taking up this language from Pollock, Lebegern argues that a review of the legislative history of the New Jersey Survival Act does not show an intent to protect the interests of New Jersey defendants. Lebegern also points to the statute's original placement in a body of legislation titled "An Act Concerning Executors and the Administration of Estates." She further argues that there are no New Jersey cases construing the Survival Act as intending to protect defendants.

With respect to the latter argument, a state's interest in the application of its laws can be expressed in ways other than a definitive ruling by a state court concerning the policies behind the legislation. A state's interest cannot depend on the fortuity of appropriate legal action necessary to establish the pertinent jurisprudence. Moreover, while the statute's title or placement in a particular portion of a state code might provide some evidence of legislative intent, Holy Trinity Church v. United States, 143 U.S. 457, 462 (1892); State v. Hodde, 858 A.2d 1126, 1130 (N.J. 2004) (noting that title of statute is often not instructive but indicating that there are exceptions), in this case neither the title nor the placement militates toward a finding that New Jersey intended to benefit either plaintiffs or

20

defendants.  The Survival Act concerned executors and administration of estates and its placement in that statutory section is not inconsistent with the interpretation we give it.  At any rate, neither a law's title nor location in the code is determinative for purposes of ascertaining the policies underlying the law.  Id.

Lebegern is correct that there is a paucity of legislative history supporting the theory that the New Jersey Legislature was concerned with resident defendants in passing the Survival Act.  She is also correct that legislative history can be a factor in making a choice of law policy analysis.  See Erny, 792 A.2d at 1219.  The federal cases dealing with the New Jersey Survival Act infer the Act's purposes by making an assumption that the Legislature's limit on the scope of damages was intentional and designed to benefit those who would naturally benefit.  See e.g., Capone, 963 F. Supp. at 413.  Although it certainly would be easier to support the application of New Jersey law if there was legislative history or caselaw from New Jersey clearly setting forth the purposes of the Survival Act, we believe that in the absence of such evidence of intent it is proper for a federal court sitting in diversity to find the purposes behind legislation by considering which entities or parties naturally benefit from a legislative scheme.  This is true not only because it is logical to assume that a legislature is cognizant of the natural consequences of its actions, see First Merchants Acceptance Corp. v. J.C. Bradford & Co., 198 F.3d 394, 402 (3d Cir. 1999), but also because legislative history from state legislatures is often sparse.  Murillo v. Bambrick, 681 F.2d 898, 908 n.20 (3d Cir. 1982) (citing Craig v. Boren, 429 U.S. 190, 199 n.7 (1976)).

21

## V. Conclusion

The majority of the district courts in this Circuit have held that New Jersey law applies under the circumstances presented in this case. Capone, 963 F. Supp. at 412-13; Amoroso, 901 F. Supp. at 902; Canon v. Hilton Hotels Corp., 664 F. Supp. at 201-02; Colley, 422 F. Supp. at 957. We conclude that this is the proper result because New Jersey has an interest in defining recovery according to its statutory scheme. While it is true that the legislative history surrounding the adoption of New Jersey's Survival Act is vague about the purposes of the law, it is appropriate to grant a state legislature the benefit of the presumption that its laws are passed with the purpose of benefitting the parties that obviously benefit. In additional, the limited caselaw discussing the purposes of the Survival and Wrongful Death Acts in New Jersey indicates that these acts were designed to operate in tandem to produce one comprehensive recovery scheme. While Pennsylvania is understandably interested in applying its liberal recovery rules to a Pennsylvania plaintiff, it cannot expect to impose a liability scheme onto an unwitting state that has confronted the issue and reached a different balance in its legislative response. While the facts of this case are undeniably tragic, the District Court properly concluded that New Jersey law applies even though it will affect the amount of available damages. Accordingly, we will affirm the order of the District Court, applying New Jersey law, and we will remand this case for further proceedings consistent with this opinion.

22