**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 08-4736
_____

NATHAN COOPER, on Behalf of Himself
and All Others Similarly Situated

v.

SAMSUNG ELECTRONICS AMERICA, INC.,
a New York Corporation

Nathan Cooper,

Appellant.

_____

Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 07-cv-03853)
District Court Judge: Hon. Jose L. Linares

_____

Argued on November 9, 2009

Before: AMBRO, GARTH and ROTH, <u>Circuit Judges</u>.

(Opinion Filed:  March 30, 2010)

Darren T. Kaplan, Esquire (**Argued**)
Chitwood Harley Harnes, LLP
2300 Promenade II
1230 Peachtree Street, N.E.

Atlanta, Georgia 30309

Arnold C. Lakind, Esquire
Szaferman, Lakind, Blumstein & Blader, P.C.
101 Grovers Mill Road, Suite 200
Lawrenceville, New Jersey  08648

       Counsel for Appellant

Robert A. Assuncao (**Argued**)
Arthur F. Fergenson
Steven F. Gooby
Ansa Assuncao
Two Tower Center Boulevard, Suite 1600
East Brunswick, New Jersey 08816

       Counsel for Appellee

_____

**O P I N I O N**

_____

ROTH, <u>Circuit Judge</u>:

Appellant Nathan Cooper ("Cooper") appeals from the District Court's dismissal of his complaint against appellee Samsung Electronics America, Inc. ("Samsung") pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6), and the District Court's decision to construe his consumer fraud claim under Arizona, rather than New Jersey, law.  We will affirm.

## I.    Background

### A.    Factual History

In October 2005, plaintiff-appellant Cooper purchased a 61-inch television manufactured by defendant-appellee Samsung from a retail store located in Maricopa County, Arizona. The model of the television purchased by Cooper was the "Samsung HL-R6178W," also known as the "628 Series 1080p DLP HDTV" (hereinafter referred to as "the 1080p television"). Cooper alleges that, as a result of representations made by Samsung in the marketing materials it produced for the 1080p television, Cooper was, at the time of his purchase, under the impression that the 1080p television he was buying was capable of accepting and displaying a high-quality video signal, known as a 1080p signal, via an input known as "HDMI." The ability to accept a 1080p signal via the HDMI input would allow the television to display high-quality video from sources that produced native 1080p signals, such as HD-DVD players. Cooper alleges that he paid a premium price for the television on the expectation that it would be able to display the high-quality 1080p signal.

In fact, the 1080p television purchased by Cooper was incapable of accepting a 1080p signal via its HDMI input.[1] Cooper learned of this problem "several months" after purchasing the 1080p television, when he "unsuccessfully attempt[ed] to connect native

---

[1]While Cooper's 1080p television *was* able to accept a 1080p signal via its **VGA** input, this feature was effectively useless for retail consumers such as Cooper, since the VGA input is primarily used to receive signals from computing hardware. In other words, while Cooper's television was, in fact, able to receive a high-quality 1080p signal, it could do so only when functioning as a computer screen. Since the model purchased by Cooper was 61 inches wide, usage of the monitor for personal computing purposes would have been highly impractical.

3

1080p devices" to his television.  However, upon learning of the problem, Cooper did not provide notice to Samsung of the alleged defect in its product.  In fact, Cooper failed to provide formal notice to Samsung regarding the 1080p problem at any time during the year following his purchase, as is expressly required by the "Samsung Color Television & Projection Television Limited Warranty to Original Purchases" (referred to hereinafter at "the Warranty") included with the 1080p television purchased by Cooper.

Cooper calculates that the loss he sustained as a result of being misled into buying his 1080p television is $349.

## B. Procedural History

On August 10, 2007, Cooper brought a putative class action against Samsung in the United States District Court for the District of New Jersey.  In his complaint, Cooper alleged  that Samsung's sale of televisions it called "1080p" but in reality were unable to accept a 1080p signal via HDMI was misleading and deceptive.  Cooper asserted six claims against Samsung in his complaint: (1) breach of express warranty; (2) breach of implied warranty; (3) violation of the Magnuson-Moss Warranty Act (15 U.S.C. §2310(d)(1)); (4) violation of the New Jersey Consumer Fraud Act ("NJCFA") (N.J. Stat. Ann. §56:8-2); (5) fraudulent concealment; and (6) unjust enrichment.  Cooper sought to represent a nationwide class comprising all persons in the U.S. who had purchased Samsung "1080p" televisions that were incapable of accepting a 1080p signal via HDMI.

Samsung moved to dismiss the complaint, and on September 29, 2008, the District

4

Court granted Samsung's motion to dismiss with respect to all his claims except the consumer fraud claim brought under the NJCFA. The District Court concluded that Arizona law applied, and therefore *sua sponte* construed the consumer fraud claim as if it had been brought under Arizona's consumer fraud statute, (Ariz. Rev. Stat. Ann. §§44-1521 et seq.) ("AZCFA"). The District Court then denied Samsung's motion to dismiss with respect to the AZCFA claim.

Cooper subsequently voluntarily agreed to a dismissal of his AZCFA claim with prejudice for the sole purpose of appealing the District Court's application of Arizona (rather than New Jersey) law to his consumer fraud claim, and on November 13, 2008, the District Court entered judgment in favor of Samsung. Cooper timely appealed: (1) the dismissal of his breach of express warranty claim; (2) the dismissal of his Magnuson-Moss act claim; (3) the District Court's application of Arizona law to his consumer fraud claim; and (4) the dismissal of his fraudulent concealment claim. We will affirm the District Court's rulings on all of these issues.

## II. Discussion

The District Court had subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. §1332(c). We have appellate jurisdiction pursuant to 28 U.S.C. §1291.

### A. Breach of Express Warranty Claim

We exercise plenary review over a district court's dismissal of a claim pursuant to

12(b)(6). Grammar v. John J. Kane Regional Centers–Glen Hazel, 570 F.3d 520, 523 (3d Cir. 2009).

To establish a breach of express warranty claim under New Jersey law[2], a plaintiff "must allege (1) a contract between the parties; (2) a breach of that contract; (3) damages flowing therefrom; and (4) that the party stating the claim performed its own contractual obligations." Frederico v. Home Depot, 507 F.3d 188, 203 (3d Cir. 2007). Cooper's claim fails as a matter of law because he has failed to properly allege a breach of contract.

The contract upon which Cooper's claim is premised—i.e., the Warranty[3]—states, in pertinent part:

> This SAMSUNG brand product, as supplied and distributed by SAMSUNG and delivered new, in the original carton to the original consumer purchaser, is warranted by SAMSUNG against **manufacturing defects in materials and workmanship** for a limited warranty period of: [...] LCD TV: One (1) Year Parts and Labor, including Display Panels. [...] This limited warranty begins on the original date of purchase, and is valid only on products purchased and used in the United States. **To receive warranty service, the purchaser must contact SAMSUNG for a problem**

[2]We generally apply the law of the forum state—here, New Jersey—to state law claims unless there is an objection by any of the parties, and since there is no objection by either party, we apply New Jersey law to Cooper's breach of express warranty claim.

[3]In general, when ruling on a motion to dismiss pursuant to 12(b)(6), a court may only consider the contents of the pleadings. Pryor v. Nat'l Collegiate Athletic Ass'n, 288 F.3d 548, 560 (3d Cir. 2002) (quoting 62 Fed. Proc. L.Ed. §62:508). However, "[d]ocuments that the defendant attaches to the motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to the claim...." Id. In this case, while Cooper's complaint did not contain the Warranty, it was clearly referenced in the context of Cooper's breach of express warranty claim, and was central to that claim. Thus, since Samsung attached the Warranty to its motion to dismiss, we can properly consider the Warranty in the course of our 12(b)(6) analysis.

**determination and service procedures.**

J.A. 244 (emphases added).

Since, in the instant case, it is undisputed that Cooper failed to provide the requisite notice to Samsung within one year of the date of his purchase of the 1080p television, Samsung is not obligated to perform under the Warranty. Moreover, the plain language of the Warranty covers only "manufacturing defects in materials and workmanship encountered in normal . . . noncommercial use of this product." Cooper does not allege a manufacturing defect; indeed, he agrees his TV was manufactured as designed. His complaint is that the design deviated from Samsung's advertisements and packaging. This is not a "manufacturing defect" that would be covered by this warranty. Given the foregoing, Cooper cannot prevail under the Warranty.

**B. Fraudulent Concealment Claim**

We agree with the District Court's dismissal of Cooper's fraudulent concealment claim because the amended class action complaint failed to plead fraud with adequate specificity under Federal Rule of Civil Procedure 9(b).

**C. Magnuson-Moss Warranty Act Claim**

The District Court dismissed Cooper's claim under the Magnuson-Moss Warranty Act, 15 U.S.C. §2301 et seq., concluding that it failed as a matter of law pursuant to 12(b)(6) because Cooper failed to state any viable underlying state claims. We exercise plenary review over a dismissal pursuant to 12(b)(6). Grammar, 570 F.3d at 523.

7

In the instant case, Cooper's Magnuson-Moss claim is based upon his state law claims of breach of express and implied warranties. Since the District Court correctly dismissed both of those claims, Cooper's Magnuson-Moss claim was also properly dismissed.

**D.    Consumer Fraud Claim**

Cooper appeals the District Court's conclusion that Arizona law applies to his consumer fraud claim. We exercise plenary review over a district court's choice-of-law conclusions. Shuder v. McDonald's Corp., 859 F.2d 266, 269 (3d Cir. 1988).

We apply the choice-of-law rules of the forum state—New Jersey—to determine what law governs Cooper's consumer fraud claim. Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); Thabault v. Chait, 541 F.3d 512, 535 (3d Cir. 2008). Under New Jersey law, choice-of-law determinations involve a two-step inquiry. In the first step, a determination is made as to whether or not an actual conflict exists between the substance of the laws of each respective potential forum. Lebegern v. Forman, 471 F.3d 424, 430 (3d Cir. 2006). If no actual conflict is found to exist, "the inquiry is over and, because New Jersey would apply its own law in such a case, a federal court sitting in diversity must do the same." Id. at 428. If, however, an actual conflict is found to exist, the inquiry proceeds to the second step.

At the time of the District Court's decision, New Jersey used the "governmental interest" analysis for tort claims. In November 2008, the New Jersey Supreme Court

8

adopted the "most significant relationship" test, as found in the Restatement (Second) of Conflict of Laws. P.V. v. Camp Jaycee, 962 A.2d 453 (N.J. 2008).[4] This test "embodies all of the elements of the governmental interest test plus a series of other factors deemed worthy of consideration." Id. at 459 n.4.

Under the first step of the analysis, the court must determine whether an actual conflict exists between the laws of the two states. There is no dispute there is an actual conflict between the consumer protection statutes of New Jersey and Arizona. The second step is to weigh the factors in the Restatement corresponding to the plaintiff's cause of action.

Under the Camp Jaycee analysis, our point of departure for the second step of the choice-of-law inquiry is the Restatement (Second) of Conflict of Laws § 148, which addresses fraud and misrepresentation. Fraud and misrepresentation torts are covered in § 148 of the Restatement. Under subsection (1), when the plaintiff's action in reliance on the defendant's false representations takes place in the same state where the false representations were made and received, there is a presumption the law of that state applies. Here, though, Samsung's representations were alleged to have been made in a different state (New Jersey) than they were received and relied upon (Arizona). Thus,

---

[4]P.V. v. Camp Jaycee, which announced a new choice-of-law analysis in New Jersey, had not been filed when the District Court decided its choice-of-law analysis in favor of Arizona. However, in light of the Restatement § 148, we are satisfied that the District Court's choice-of-law analysis was correct despite the fact that it did not have the benefit of Camp Jaycee.

9

this case is governed by subsection (2), under which the following contacts must be weighed:

> (a) the place, or places, where the plaintiff acted in reliance upon the defendant's representations,
> (b) the place where the plaintiff received the representations,
> (c) the place where the defendant made the representations,
> (d) the domicil, residence, nationality, place of incorporation and place of business of the parties,
> (e) the place where a tangible thing which is the subject of the transaction between the parties was situated at the time, and
> (f) the place where the plaintiff is to render performance under a contract which he has been induced to enter by the false representations of the defendant.

Restatement (Second) of the Conflict of Laws § 148(2).

Cooper, who purchased the television in his home state of Arizona, is not entitled to sue under the New Jersey consumer fraud statute. The transaction in question bears no relationship to New Jersey other than the location of Samsung's headquarters. Cooper's claim bears the most significant relationship with Arizona, the state in which the television was marketed, purchased, and used.[5]

## III. Conclusion

The District Court did not err in granting Samsung's motion to dismiss. For the reasons set forth above, we will affirm the judgment of the District Court.

---

[5]We reject Cooper's argument that the District Court erred in resolving the choice-of-law determination as to his statutory consumer fraud act claim at the motion to dismiss stage, rather than wait until the class certification stage.

10

AMBRO, Circuit Judge, dissenting in part

I join my colleagues in all but Part II.D. Because the District Court did not have the benefit of the *Camp Jaycee* decision and thus did not conduct the "most significant relationship" analysis, I would vacate and remand for that Court to conduct the choice-of-law analysis in the first instance. Moreover, I do not view the answer to the choice-of-law question presented here to be as easy to discern as my colleagues perceive it.

First, New Jersey has a strong interest in deterring fraudulent conduct occurring within its state borders by domestic businesses. *See In re Mercedes-Benz Tele Aid Contract Litig.*, 257 F.R.D. 46, 67 (D.N.J. 2009) ("Given the fact that all of the conduct underlying Plaintiffs' consumer fraud claim took place in [New Jersey], consideration of the place where the defendant made the representations[] strongly supports applying the [New Jersey Consumer Fraud Act] to Plaintiffs' claims.") (internal quotation marks and citation omitted). This is an important consideration under the Restatement (Second) of Conflict of Laws ("Restatement"), but one the District Court and the majority do not consider. *See* Restatement § 148(2)(c) (including as a relevant factor "the place where the defendant made the representations"); *id.* § 148 cmt. c ("The place where the defendant made his false representations . . . is as important a contact in the selection of the law governing actions for fraud and misrepresentation as is the place of the defendant's conduct in the case of injuries to persons or to tangible things."). According to Cooper, Samsung conceived of and created the alleged misrepresentations in New

Jersey and orchestrated the alleged fraud from New Jersey. That the plaintiff is from Arizona, rather than any other state in which these Samsung televisions were sold, is happenstance from Samsung's perspective. *Cf. P.V. v. Camp Jaycee*, 962 A.2d 453, 466 (N.J. 2008) (noting that the court has "continuously deferred to the rights of other jurisdictions to regulate conduct within their borders," particularly "when the conduct is ongoing and directed towards residents and non-residents alike").

The Restatement also directs courts to put "emphasis upon the purpose sought to be achieved by the relevant tort rules of the potentially interested states, the particular issue and the tort involved." Restatement § 148 cmt. e; *see also id.* § 6(2) (including as relevant factors "the relevant policies of the forum" and "other interested states" and the "basic policies underlying the particular field of law"); *id.* § 6 cmt. h ("[T]here is good reason for the court to apply the local law of that state which will best achieve the basic policy, or policies, underlying the particular field of law involved."). While one purpose of the New Jersey Consumer Fraud Act is to compensate defrauded consumers, it "serves as a deterrent" by awarding successful plaintiffs "treble damages, attorneys' fees, filing fees, and costs." *Cox v. Sears Roebuck & Co.*, 647 A.2d 454, 463 (N.J. 1994). "That deterrent effect would be compromised" if Samsung could "avail itself of the law of states which limit recovery in consumer fraud actions to compensatory damages simply because its alleged wrongful activity, which took place within New Jersey, had nationwide effects." *In re Mercedes-Benz*, 257 F.R.D. at 68. As for the interest in

2

compensating fraud victims, because New Jersey's law is recognized as one of the strongest in the country,[1] those residing in other states usually will receive no less—and perhaps more—protection than their own states would provide. Accordingly, application of New Jersey's law often will not frustrate other states' interests in compensation for their residents. Under the Restatement, "[i]f the purposes sought to be achieved by a local statute or common law rule would be furthered by its application to out-of-state facts, this is a weighty reason why such application should be made." Restatement § 6 cmt. e.

Legislative intent is also relevant, as the Restatement instructs courts to "give a local statute the range of application intended by the legislature when these intentions can be ascertained and can constitutionally be given effect." *Id.* § 6 cmt. b. "If the legislature intended that the statute should be applied to the out-of-state facts involved, the court should so apply it unless constitutional considerations forbid." *Id.* Here, the Act permits recovery to "[a]ny person who suffers any ascertainable loss," N.J. Stat. Ann. § 56:8-19, and one court has observed that there is "little doubt that the New Jersey Legislature intended its Consumer Fraud statute to apply to sales made by New Jersey sellers even if the buyer is an out-of-state resident and some aspect of the transaction took place outside

---

[1] Indeed, New Jersey courts have concluded the state legislature *intended* the Act to "be one of the strongest consumer protection laws in the nation." *Huffmaster v. Robinson*, 534 A.2d 435, 437 (N.J. Super. Ct. Law Div. 1986) (internal quotation marks and citation omitted).

3

New Jersey." *Boyes v. Greenwich Boat Works, Inc.*, 27 F. Supp. 2d 543, 547 (D.N.J. 1998). This is an important consideration for the choice-of-law determination in this case.

I am troubled that the majority conducts a fact-intensive, six-factor inquiry in two sentences, as there are good arguments on both sides. I would remand for the District Court to conduct the choice-of-law analysis under the "most significant relationship" test, and thus respectfully dissent in part.