**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 19-3024
_____

REYNOLDS ALLEY

v.

MTD PRODUCTS, INC;
MTD PRODUCTS LTD.;
MTD LLC; MTD HOLDINGS, INC.;
MTD CONSUMER GROUP, INC.,
Appellants

_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civ. No. 3:17-cv-00003)
District Judge: Hon. Kim R. Gibson

_____

Submitted Under Third Circuit L.A.R. 34.1(a)
on July 2, 2020

Before: KRAUSE and PHIPPS, *Circuit Judges*, and BEETLESTONE,* *District Judge*.

(Filed: July 10, 2020)

---

\* Honorable Wendy Beetlestone, United States District Court for the Eastern District of Pennsylvania, sitting by designation.

———————

**OPINION**[†]

———————

BEETLESTONE, *District Judge*.

In January 2017, Appellee Reynolds Alley, sued Appellants MTD[1] for strict liability and negligence in connection with injuries he sustained to his hand when the tire rim of a snow thrower designed and manufactured by MTD failed and burst. In ruling on MTD's renewed motion for judgment as a matter of law following a jury verdict in favor of Alley, the District Court rejected MTD's argument that Pennsylvania's choice-of-law principles required application of Ohio's ten-year statute of repose for product liability actions—a statute which, if imposed, would have barred Alley's causes of action. The sole question on appeal is whether the District Court erred in so doing.[2]

There is no dispute that the choice-of-law rules of Pennsylvania apply[3] and that we are presented with an actual or real conflict between Ohio and Pennsylvania law in that while Pennsylvania has not enacted a statute of repose for product liability claims, Ohio

———————

[†] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

[1] We shall refer to MTD Products, Inc., MTD Products Ltd., MTD LLC, MTD Holdings, Inc., and MTD Consumer Group, Inc. collectively as "MTD" or Appellants.

[2] The District Court had subject matter jurisdiction over this product liability action under 28 U.S.C. § 1332, and this Court has jurisdiction to review the District Court's final decision pursuant to 28 U.S.C. § 1291. The Court exercises "plenary review over the District Court's choice-of-law determination." *Hammersmith v. TIG Ins. Co.*, 480 F.3d 220, 226 (3d Cir. 2007).

[3] *See Klaxon v. Stentor Elec. Mfg. Co.*, 313 U.S. 487 (1941).

has.  *See* Ohio Rev. Code Ann. § 2305.10(C)(1).  Accordingly, Alley's cause of action would be barred under Ohio's statute of repose but could proceed under Pennsylvania law.  Further, neither party challenges the District Court's determination that there is a "true" conflict here.  *See Hammersmith*, 480 F.3d at 230 (finding that a true conflict exists where both states have an interest in applying their own law).

To resolve a true conflict under Pennsylvania law, we first evaluate the parties' contacts and relationships by conducting a qualitative analysis of each state's contacts under Section 145(2)(a)-(d) of the Restatement (Second) of Conflict of Laws,[4] with the aim of determining which state has the most significant contacts or relationships with the incident as well as the greatest governmental interest in seeing its laws enforced.[5] *See Cipolla v. Shaposka*, 267 A.2d 854, 856 (Pa. 1970); *see also Griffith*, 203 A.2d at 805 (requiring "analysis of the policies and interests underlying the particular issue before the court"); Restatement (Second) of Conflict of Laws § 146 (1971).[6]

---

[4] The relevant contacts for a tort include: "(a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered."  Restatement (Second) of Conflict of Laws § 145(2); *Compagnie des Bauxites de Guinee v. Argonaut-Midwest Ins. Co.*, 880 F.2d 685, 689 (3d Cir. 1989) (same).

[5] Contrary to the District Court's assertion, this interest analysis does not require a normative judgment about the respective merits of each state's law.  Rather, we are tasked with assessing which state is "most intimately concerned with the outcome of [the] particular litigation."  *Griffith v. United Air Lines, Inc.*, 203 A.2d 796, 806 (Pa. 1964) (internal quotation marks and citation omitted).

[6] Section 6 of the Restatement (Second) of Conflict of Laws, which establishes choice-of-law principles, enumerates factors for consideration in the choice-of-law analysis, the relevant ones here being:

(a) the needs of the interstate and international systems, b) the relevant policies of the forum, (c) the relevant policies of other interested states and the

3

Certainly MTD has identified contacts that weigh in favor of applying Ohio's law: Specifically, MTD is headquartered and has its principal place of business in Ohio; its product quality, safety, and testing departments as well as some of its manufacturing, warehouse, and distribution facilities are also located in Ohio; and, it employs 100 engineers in Ohio. Further, the snow thrower in question was designed, engineered, and tested in Ohio, not in Pennsylvania.

On the other hand, the situs of the accident in Pennsylvania was not happenstance: Appellant lives in Pennsylvania, purchased the snow thrower in Pennsylvania from a third-party retailer selected by MTD, only ever used it in Pennsylvania, was injured by it in Pennsylvania, and was treated for that injury in Pennsylvania. Where, as here, the location of the accident was not fortuitous "the place of injury assumes much greater importance, and in some instances may be determinative." *LeJeune v. Bliss-Salem, Inc.*, 85 F.3d 1069, 1072 (3d Cir. 1996) (internal quotations and citation omitted); *see also Shuder v. McDonald's Corp.*, 859 F.2d 266, 272 (3d Cir. 1988); *cf. Griffith*, 203 A.2d at 805-06 (site of plane crash in Colorado was fortuitous when a Pennsylvania resident flying from Philadelphia to Phoenix, Arizona, was killed).

MTD argues strenuously that Ohio's codification of its public policy rationales[7] for its statute of repose weighs in favor of applying Ohio law, while Pennsylvania's lack of a

relative interests of those states in the determination of the particular issue, (d) the protection of justified expectations, (e) the basic policies underlying the particular field of law, (f) certainty, predictability and uniformity of result, and (g) ease in the determination and application of the law to be applied.

Restatement (Second) of Conflict of Laws § 6 (1971).

[7] Ohio's codified rationales include its recognition of a manufacturer's lack of control over a product after the product leaves it hands, the difficulty in presenting evidence

4

statute of repose and any such codification suggests "mere inaction," Appellant's Brief at 22, which weighs against applying Pennsylvania law. But it does not necessarily follow from Pennsylvania's lack of a statute of repose that Pennsylvania's interests are less strong than Ohio's. Certainly we cannot make the leap from one's non-existence to a lack of interest in the policy issues that underpin the decision to enact or not to enact a statute of repose. That the Pennsylvania legislature has enacted statutes of repose but not in the product liability context, *see, e.g.*, 42 Pa. Stat. and Cons. Stat. Ann. § 5536 (statute of repose in construction project context), that the issue has been raised for discussion in Pennsylvania's legislature numerous time,[8] and that after the legislature passed a seven-year statute of repose for medical malpractice claims, the Pennsylvania Supreme Court struck it down as unconstitutional in part because it "deprive[d] malpractice victims who [did] not discover their injury or its cause within seven years of their right to a remedy," *see Yanakos v. UPMC*, 218 A.3d 1214, 1226-27 (Pa. 2019), suggests there is a robust debate in the Commonwealth about the value and legitimacy of statutes of repose. While Ohio may have resolved the issue in favor of a statute of repose at least in the product liability context, Pennsylvania has not. Reading the tea leaves as to why it has not does

---

regarding the design process long after the design occurred, and the inappropriateness of applying current standards to products manufactured many years earlier than the commencement of a product liability action. *See* 2004 Ohio Laws File 144 (S.B. 80) (Am Sub. S.B. 80), Section 3.

[8] The Pennsylvania Legislative Journals document several debates regarding the advisability of statutes of repose: Appellee points in particular to statements made by legislators in 1976, 1980, 1983, 1990, and 1992 that speak to the importance of consumer protection and how statutes of repose hurt consumers. One pithy example: "What happens with the statute of repose is not only do you not level the playing field, you make sure that the other side does not even have a chance to suit up for the game." 1990 Penn. Legis. J. – House 592.

5

not fall within our bailiwick—but Pennsylvania's legislative and judicial engagement on the issue illustrate that there is an ongoing discussion which, at least as of now, has been resolved purposefully in favor of no statute of repose for product liability claims. Where, as here, each state has an interest in the application of its laws and "the application of the foreign state's law would frustrate the purposes of the forum state, the presumption is to apply the law of the forum. . . . The law of the forum should be applied even though a foreign state also has an interest in the application of its contrary policy." *Lebegern v. Forman*, 471 F.3d 424, 433 (3d Cir. 2006) (internal quotation marks and citations omitted).

Here specifically, Appellee, as a Pennsylvania resident who purchased and used the product in Pennsylvania, had a justifiable expectation that Pennsylvania law would apply should the untoward happen. *See Cipolla,* 267 A.2d at 856 (noting that "it seems only fair to permit a defendant to rely on his home state law when he is acting within that state"). By contrast, MTD as a manufacturer of a nationally marketed product, could not expect Ohio law to apply everywhere.

Viewing "the factors qualitatively as opposed to quantitatively," *Carrick v. Zurich-American Ins. Grp.*, 14 F.3d 907, 910 (3d Cir. 1994), as Pennsylvania requires us to do, the parties' relationship is centered in Pennsylvania, not Ohio.

Accordingly, we will affirm the District Court's judgment.