**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4054-18T3

DONNA L. MICHEL and
GEORGE SCOTT MICHEL,

    Plaintiffs-Respondents,

v.

SHARON G. LANGEL, CONROW
CONSTRUCTION CO., INC., and
NEW JERSEY MANUFACTURERS
INSURANCE COMPANY a/k/a NJM
INSURANCE GROUP,

    Defendants-Respondents,

and

VNO WAYNE TOWNE CENTER,
LLC, and DSW DESIGNER SHOE
WAREHOUSE,

    Defendants-Appellants.

_____

Submitted March 3, 2020 – Decided May 8, 2020

Before Judges Accurso and Gilson.

On appeal from the Superior Court of New Jersey, Law Division, Passaic County, Docket No. L-0458-17.

Wilson, Elser, Moskowitz, Edelman & Dicker LLP, attorneys for appellants (Andrew J. Heck, of counsel and on the briefs).

Burke & Potenza, attorneys for respondent Conrow Construction Co., Inc. (John Burke, on the brief).

PER CURIAM

This appeal presents questions of whether the failure of a snow removal contractor to add the owner of a shopping mall to its commercial general liability policy caused the owner damages and whether the contractor had independent obligations to defend and indemnify the owner for claims arising from an accident causing personal injuries to a third party. On summary judgment, the trial court held that no damages resulted from the failure to name the owner as an additional insured party on the policy and the defense and indemnification obligations did not cover the owner's negligence. We agree and affirm.

I.

On February 14, 2015, Donna Michel was walking across the parking lot of the Wayne Towne Center when she was struck by a car driven by Sharon Langel. At the time of the accident, there were piles of snow on medians at the end of rows of parking spaces in the parking lot. It was alleged that the piles of

A-4054-18T3

snow impeded Langel's visibility as she made a left-hand turn just before her car struck Michel.

In February 2017, Michel and her husband sued Langel, VNO Wayne Towne Center, LLC (VNO), DSW Designer Shoe Warehouse (DSW), and Conrow Construction Co., Inc. (Conrow). VNO was the owner of the shopping center, DSW was the store Michel was walking in front of just before she was hit, and Conrow had a contract to plow the snow in the Wayne Towne Center parking lot.

VNO and DSW asserted cross-claims against Conrow, contending that Conrow had breached its agreement with VNO. In connection with those cross-claims, VNO had demanded defense and indemnification, but that request was denied.

The scope of Conrow's duties and responsibilities related to plowing the parking lot was governed by a services agreement with VNO (the Services Agreement). The Services Agreement described when Conrow was to plow snow and addressed Conrow's duty to remove snow. In that regard, Exhibit B to the Services Agreement, which defined the scope of Conrow's work, stated:

> Snow will be removed from the premises only when directed to do so by "Vornado personnel," Contractor will be responsible for the disposal of snow if it should become necessary to remove it. Separate

A-4054-18T3

arrangements for cost to remove snow shall be made prior to the commencement of snow removal.

All snowplowing and removal of snow will be done in a safe and good workmanlike manner and in accordance with the attached snowplowing plan (where available) to the satisfaction of shopping center and store management.

The Services Agreement also contained insurance provisions and an indemnification provision. Under the insurance provisions, Conrow was required to obtain and maintain various types of insurance, including commercial general liability coverage. In that regard, the Services Agreement stated:

Contractor shall . . . obtain and maintain . . . Commercial General [liability insurance] providing coverage for Premises/Operations and Products/Completed Operations including contractual liability for insured contracts, on an occurrence basis, a minimum limit of $1,000,000 per occurrence and $2,000,000 in the annual aggregate for bodily injury including death, personal/advertising injury and property damage.

Conrow was also required to maintain an excess (umbrella) policy providing $5,000,000 in coverage for any one occurrence. The Services Agreement also provided that VNO was to be named as an additional insured on most of the insurance policies.

4

Under the indemnity provision, Conrow agreed to defend and indemnify VNO from all claims and damages caused by Conrow, excluding any claim or damage caused by the "sole negligence" of VNO. In that regard, the Services Agreement stated:

> Contractor hereby agrees to defend . . . indemnify and hold harmless [VNO] . . . from and against any and all claims, damages, liabilities, losses . . . caused by, arising out of, resulting from or occurring in connection with the performance of the Work, any act or omission by . . . Contractor . . . unless caused by the sole negligence of such Owner Party.

The Services Agreement also provided that Conrow's liability would not be limited by insurance coverage. Thus, subsection F of the insurance subheading in the Services Agreement stated:

> Regardless whether Contractor's liability hereunder is or is not covered by insurance, Contractor's liability shall in no way be limited by the amount of insurance recovery or the amount of insurance in force, or available, or required by any provisions of this Agreement or otherwise by the Overall Contract. The limits listed above are considered minimum.

Exhibit B of the Services Agreement detailed the scope of Conrow's responsibilities. In that regard, "Scope of Work/Services" was a defined term in the Services Agreement, which referred to Exhibit B. Exhibit B also had an indemnification provision that addressed Conrow's insurance obligations and

5

Conrow's obligation to defend and indemnify against its own "negligent . . . acts or omissions." In relevant part, the indemnity provision in Exhibit B provided as follows:

> Commercial General Liability insurance as will protect Contractor and Vornado from any and all claims for damages due to bodily injury (including death), personal injury, or property damage arising out of or in any way connected with the acts or omissions to act of Contractor to fully comply with the terms, conditions and provisions of this Contract. Such insurance coverage shall be in an amount of not less than $5,000,000, combined single limit.
>
> . . . .
>
> Contractor agrees to indemnify, defend and hold harmless Owner, its employees and agents from and against any and all claims, loss, damage to property or injury to person including death, arising out of or relating to the negligent or intentional acts or omissions of Contractor, its employees or its agents, or the failure to perform by Contractor its employees or its agents, this Agreement including, but not limited to, Contractors [sic] failure to keep in force any insurance policy required under this Agreement. Contractor shall defend any actions, suits or proceedings that may be brought against [O]wner. This indemnification extends to any and all attorneys' fees or other costs or expenses suffered by Owner, its employees or its agents.

Finally, the Services Agreement stated that it was governed by New York law.

Conrow obtained commercial general liability insurance but did not name VNO as an additional insured. Instead, it only named "Vornado Realty Trust,"

the property management company, as an additional insured party. Moreover, the policy excluded coverage for claims "arising out of the acts, omissions and/or negligence of the 'additional insured(s).'"

In October 2017, Michel and her husband settled their claims against Langel. Thereafter, they amended their complaint to name as a defendant their own automobile insurer – New Jersey Manufacturers Insurance Company (NJM) – seeking to recover underinsured motorist benefits.

During discovery, a representative of Conrow testified at his deposition that the property manager instructed Conrow to locate the plowed snow in the same places as the prior contractor. The representative observed that the prior contractor had piled plowed snow in the median islands in front of the DSW store. Thus, Conrow asserted that the decision as to where to place the plowed snow was made by the property manager, who was controlled by VNO.

In September 2018, following the completion of discovery, VNO and DSW moved for partial summary judgment against Conrow, contending that Conrow had breached its contractual agreement to name VNO as an additional insured and its agreement to defend and indemnify VNO. Conrow opposed that motion, and in October 2018, the trial court heard oral argument.

While that motion was pending, in November 2018, all parties participated in mandatory, non-binding arbitration in accordance with Rules 4:21A-1 to -9. The arbitrator found that Michel's injuries were caused by the negligence of Langel, VNO, DSW, and Conrow. The arbitrator then awarded Michel $450,000 in gross damages and allocated the liability among Michel and defendants: forty percent to Michel; thirty percent to Langel; fifteen percent to VNO and DSW; and fifteen percent to Conrow.

No party objected to that arbitration award, and on January 28, 2019, the award was incorporated into a judgment. The judgment noted Michel and her husband had settled their claim against Langel "and proceeded with a claim for [underinsured] motorist benefits against [NJM], subject to the terms, conditions and limitations of the policy issued by [NJM]." Accordingly, the judgment awarded damages, including prejudgment interest, in the following amounts: NJM to pay $36,040.60; VNO and DSW to pay $70,633.55; and Conrow to pay $70,282.00.[1]

On March 21, 2019, the trial court issued an order denying the partial summary judgment motion by VNO and DSW. The court supported its decision

---

[1] It is not clear why there is a slight discrepancy in the amount to be paid by Conrow, as compared to VNO and DSW. Nevertheless, no party has raised an issue concerning the difference in those amounts, which is $351.55.

A-4054-18T3

with a written opinion. The court reasoned that the arbitrator had found VNO negligent for its own conduct. The court also reviewed the indemnification provisions in the Services Agreement and concluded that "nothing in the Services Agreement" required Conrow to defend or indemnify VNO for its own negligent conduct.

Turning to the insurance provisions, the trial court found that Conrow had failed to name VNO as an additional insured. The trial court went on to reason, however, that that failure did not cause VNO any damages because the insurance policy excluded coverage for the negligence of the additional insured party. In other words, even if VNO had been properly named as an additional insured, it would not have been covered for its own negligence. In that regard, the court noted that nothing in the Services Agreement prevented Conrow from obtaining a policy excluding coverage for the negligence of the additional insured.

VNO and DSW moved for reconsideration. After hearing oral argument, the trial court denied that motion in an order entered on April 26, 2019.

II.

VNO and DSW appeal from the order denying their motion for summary judgment against Conrow and the order denying their motion for reconsideration. They contend that the trial court erred in concluding that

9

Conrow had not materially breached its obligations under the Services Agreement to provide insurance for VNO and to defend and indemnify VNO. We disagree and affirm.

As a preliminary matter, we address the choice of law. As noted, the Services Agreement stated that it was governed by New York law. Our Supreme Court has held that "[o]rdinarily, when parties to a contract have agreed to be governed by the laws of a particular state, New Jersey courts will uphold the contractual choice if it does not violate New Jersey's public policy." N. Bergen Rex Transp. v. Trailer Leasing Co., 158 N.J. 561, 568 (1999) (quoting Instructional Sys., Inc. v. Comput. Curriculum Corp., 130 N.J. 324, 341 (1992)); compare with Param Petroleum Corp. v. Commerce and Indus. Ins. Co., 296 N.J. Super. 164, 170 (App. Div. 1997) (holding that choice-of-law agreements "in liability insurance policies should generally be ignored at least when the insured risk is in this State" (emphasis added)). Here, however, New York law is consistent with New Jersey law. Accordingly, there is no conflict and we can apply New Jersey law. See McCarrell v. Hoffmann-La Roche, Inc., 227 N.J. 569, 584 (2017) (citations omitted); Grossman v. Club Med Sales, 273 N.J. Super. 42, 50 (App. Div. 1994).

The questions presented are legal issues involving the interpretation of the Services Agreement. Accordingly, we review these issues de novo. Manahawkin Convalescent v. O'Neill, 217 N.J. 99, 115 (2014) (quoting Kieffer v. Best Buy, 205 N.J. 213, 222-23 (2011)); MPEG LA, LLC v. Samsung Elecs. Co., Ltd., 86 N.Y.S.3d 4, 8 (App. Div. 2018) (citations omitted). Moreover, the issues came before the trial court on summary judgment, and we review such decisions de novo, using the same standard as the trial court. RSI Bank v. Providence Mut. Fire Ins. Co., 234 N.J. 459, 472 (2018) (citing Bhagat v. Bhagat, 217 N.J. 22, 38 (2014)); Grande v. St. Clare's Health Sys., 230 N.J. 1, 23-24 (2017) (quoting Bhagat, 217 N.J. at 38). Here, VNO and DSW were the moving parties and they contend that they are entitled to summary judgment based on the plain language of the Services Agreement.

Conrow's potential liability to VNO is governed by the obligations it undertook in the Services Agreement. There are two relevant obligations: insurance coverage and indemnification.

As previously summarized, the Services Agreement required Conrow to obtain commercial general liability coverage and to add VNO as a covered party. As the trial court noted, there is some inconsistency between paragraph 5(F)(1) and the indemnity provision found in Exhibit B. Paragraph 5(F)(1) requires

11

"[e]ach Owner" to be an additional insured and VNO was defined as an owner. The indemnity provision in Exhibit B refers to coverage for "Vornado." We agree with the trial court that this inconsistency is not material for purposes of determining Conrow's obligations.

The plain language of paragraph 5(F)(1) required that VNO be named as an additional insured under the commercial general liability policy obtained by Conrow. There is no dispute that VNO was not named as an additional insured. Thus, the question is whether VNO was damaged by that failure. We agree with the trial court that VNO was not damaged.

In establishing the requirements for coverage, the Services Agreement did not state that the additional insured needed to be insured for its own negligence. Instead, as would be logical, the insurance provision was designed to assure that Conrow's negligence was covered. The policy that Conrow obtained did not cover the additional insured for their own negligence. Consequently, VNO was not damaged by Conrow's failure to name it as an additional insured because VNO's liability was predicated on its own negligence.

Conrow also had independent obligations to defend and indemnify VNO. As previously summarized, however, those obligations were limited to defending and indemnifying for claims or damages arising out of Conrow's

12

"act[s]" or "omission[s]." The indemnification provision did not obligate Conrow to defend or indemnify VNO for its own negligence. Indeed, the indemnity provision in the Services Agreement excludes anything caused "by the sole negligence" of VNO.

In interpreting a contract, we are guided by the plain language used by the parties in their agreement. Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 224 N.J. 189, 200 (2016) (quoting Chubb Custom Ins. Co. v. Prudential Ins. Co. of Am., 195 N.J. 231, 238 (2008)); Nomura Home Equity Loan, Inc., Series 2006-FM2 v. Nomura Credit & Capital, Inc., 92 N.E.3d 743, 762 (N.Y. 2017) (Feinman, J., dissenting in part) (citing Metro. Life Ins. Co. v. Noble Lowndes Intl., 643 N.E.2d 504 (N.Y.1994)). A plain reading of the insurance provisions of the Services Agreement leads to the conclusion that Conrow breached none of its obligations with regard to the insurance coverage it obtained. Similarly, a plain reading of the indemnification provisions in the Services Agreement and Exhibit B again establishes that Conrow did not breach its obligations.

Logically, in both the insurance and the indemnification provisions in the Services Agreement, Conrow was protecting VNO from claims arising out of negligent or intentional actions by Conrow and its employees. Those provisions

13

did not protect VNO from claims arising out of VNO's own, independent, negligent acts. Consequently, the contract was consistent with most indemnification provisions, which generally do not protect the party being indemnified from its own negligence. See Azurak v. Corp. Prop. Inv'rs, 175 N.J. 110, 111-13 (2003) (citations omitted) (holding that an indemnity provision that is "neither explicit nor unequivocal on the subject of the indemnitee's negligence" should not be construed to cover the indemnitee's negligence no matter how broadly it is written); Ramos v. Browning Ferris Indus., Inc., 103 N.J. 177, 191 (1986) (citations omitted) ("[A] contract will not be construed to indemnify the indemnitee against losses resulting from its own negligence unless such an intention is expressed in unequivocal terms."); Pardo v. Bialystoker Ctr. & Bikur Cholim, Inc., 781 N.Y.S.2d 339, 342 (App. Div. 2004) (citations omitted) (holding that an agreement that indemnifies a party from its own negligence is against public policy).

Having concluded that the trial court correctly denied summary judgment in favor of VNO and DSW, there was no basis for a motion for reconsideration. Accordingly, we also affirm the order denying reconsideration.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

14

A-4054-18T3